(22 Misc. Rep. 420.)

## In re SPAULDING'S ESTATE.

(Surrogate's Court, Erie County. January, 1898.)

GIFTS—TRANSFER TAX.

Testator, born in 1809, had never been sick until March, 1897, and transacted his business personally until that time. In November, 1895, he told one of his sons that he was a very old man, and his estate had become a burden to him, that he intended ultimately to give it to his children, and proposed to give some of it now, and gave the son securities for the benefit of his three children equally, and shortly afterwards gave them some more securities. These securities were locked up in a box where the father formerly kept them, which box was then labeled with the names of the children. Testator never saw the securities after giving them away, and the interest coupons thereon were collected by the donees. *Held*, that the gifts were absolute, and not in contemplation of death or in extremis, so as to render the property subject to a transfer tax under Laws 1891, c. 215, providing for taxing property passing by transfer by deceased, "made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor," and gifts made in contemplation of death.

Appeal from an order fixing the transfer tax. Partly set aside.

Moot, Sprague, Brownell & Marcy, for appellants.

Percy S. Lansdowne and Timothy E. Ellsworth, for state comptroller.

Hamilton Ward, Jr., Transfer Tax Asst. Dist. Atty., for county treasurer of Erie county.

MARCUS, S. This is an appeal from an order entered herein fixing the transfer tax. The testator was born on the 24th day of February, 1809, and at the time of his death was a widower with three children, who are people of middle life. He had never been sick nor had a doctor until the middle of March, 1897, and seems to have transacted his business personally until that time. He had no disease, and died of old age. One morning in November of 1895 the testator called one of his sons into the banking office, and told him he had got to be a "pretty old man," or a "very old man," and his estate had got to be a burden to him; that he intended to give it ultimately to his children, and purposed to give some of it now. The son took the securities given to him by his father for the benefit of the children, and locked them up in a box where his father formerly kept them. This box was then labeled with the names of all three children, and kept in the same place until the fall of 1896, when it was transferred to the safe-deposit vaults of the Marine Bank. From the time of the gifts to the time of his death the tes-

tator never saw the securities, or had anything to do with them. The box was then taken in the name of the donees, who had the combination, so that any of them had access to the box containing the securities. The interest coupons payable on and after the 1st of January, 1897, were collected by and paid to the beneficiaries of the gift. The total amount of the gifts in question amounted to $1,500,-000, and were given on two occasions. The first gift amounted to $1,038,900, and the second gift such an additional amount as to make the gift to each of the three children $500,000. After the gifts mentioned, the two sons were assessed on the city assessment rolls $30,-000 each, and the assessment on the father's estate reduced $100,000. Some of the securities were sold by the donees before the testator's death. The testator left a will bequeathing the bulk of his estate to the three children mentioned, which will disposed of upward of $3,000,000. This appeal is to determine the taxing of the gifts mentioned.

It is contended on the part of the appellants that the gifts made by the testator were valid, absolute, and sufficient to transfer all titles to the securities in the donees, thereby becoming their property; that the testator's estate has no right or claim to the same whatsoever, and they are, therefore, not taxable as assets of the estate in the hands of the executors. It is urged on the part of the estate that the gifts were "in contemplation of death." Pennsylvania and Illinois have provisions similar to the New York laws for a tax on transfers made "in contemplation of death." It became part of our laws by chapter 215 of the Laws of 1891, and so far has had no judicial interpretation which I have been able to discover. This provision of the statute is, therefore, novel. From the testimony taken before the appraiser, I am satisfied that the gifts under consideration were not gifts causa mortis, since they had not all the necessary elements to so characterize them. The discussion of the question, therefore, must determine whether gifts inter vivos are included within the meaning of the act. It is conceded that the statute contemplates gifts causa mortis. It is not claimed on the part of the state that the property transferred, and which is now in question, was such a gift. Gifts causa mortis are of a fixed character. They partake of the character of gifts inter vivos from delivery, which is essential to their validity; and yet this single feature, as assimilating them to ordinary donations, merely characterizes the mode of the thing and not its type and quality. Bloomer v. Bloomer, 2 Bradf. Sur. 346. It being conceded that the gift was not causa mortis, nor a gift intended to take effect in possession or enjoyment at or after death, the question must be determined whether a gift inter vivos—the donor dying weeks, months, or years thereafter—can have "contemplation of death" attached to it to defeat, in part, the purpose of the gift, and bring it within the transfer tax act, or, reversely, defeat the transfer tax act, and free the gift from the tax, when the testimony shows an absolute and irrevocable gift; whether old age, per se, makes all gifts convertible into gifts "in contemplation of death" for the purposes of taxation, irrespective of any intention on the part of the donor. It must not be forgotten

that alienability is one of the essential qualities of property, and allows the owner to control its disposition, and freely give his property to whomsoever he pleases, limited, perhaps, to the right of creditors. This is a special tax law. In re McPherson, 104 N. Y. 317, 10 N. E. 685. All such laws must be clear and unmistakable in their meaning, for a citizen cannot be subjected to special burdens without a clear warrant of law. In re Will of Eysaman, 113 N. Y. 78, 20 N. E. 613. Determining, as I have, that the testimony has failed to satisfy me that the gift was in contemplation of death, or causa mortis, it must now be considered how far, if at all, this law applies to gifts other than causa mortis. This brings up the question squarely, and at once suggests that, if another view is taken, so that all gifts will be comprehended by the transfer tax act,—if it be intended to cover all gifts made inter vivos,—what form of testimony will be necessary from which a fair conclusion may be drawn that will protect administrators from being unjustly obliged to subject their trusts to the succession tax on the one hand and the state from receiving its due on the other. All gifts are inter vivos except those causa mortis. A gift causa mortis differs from a gift inter vivos not only with reference to the condition of death, but in further being subject to revocation by the donor himself, and requiring that the donee shall actually survive him. The line is often dim which distinguishes gifts causa mortis and those, though inter vivos, having allied to them some of the other's elements.

What form of testimony will mark the line of the beginning and end of that unfailing thought "in contemplation of death"? Death is the subject of much contemplation by all who reach maturity, when about to dispose of any considerable property to their next of kin. If other gifts than causa mortis are included in the statute, what cases does it cover? What controls? Is it the age of the party? The condition of his health? The casual remark made by him at the time? Why not include advancements given months or years before decease, though psychologically given in contemplation of death? How could the tax be collected? A special statute passed for the purposes of taxation should not have such a forced construction. The original act (chapter 483, Laws 1885) and all amendments thereto down to 1891 refer only to property passing by will, or intestacy, or transfer by deceased, "made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor." There is no material change in the act of 1891, except the words, "the gifts made in contemplation of death," etc. It has been held that the tax imposed by the act of 1885 is not a property tax, but a tax under the right of succession under a will, or devolution in case of intestacy. In re Swift, 137 N. Y. 77, 32 N. E. 1096. The jurisdiction for the collection of the tax is conferred on the surrogate's court, the jurisdiction of which is confined to decedent's estates. The payment of the tax has always been imposed on the executor, administrator, or trustee, though likewise on the property transferred. They are made personally liable for the payment of the same until the tax is paid; nor are they entitled to a final settlement of an estate until such tax is paid. They are em-

powered to sell the decedent's property to pay the tax. The surrogate shall appoint an appraiser to "fix the fair market value (at the time of the transfer thereof) of property of persons whose estates shall be subject to the payment of any tax imposed by this article." Tax Law, § 230. The provisions of the law under discussion relate exclusively to the method of procedure for determining the market value of the property of decedents and the succession tax to be paid thereon. It is silent as to any provisions for appraisal or determination of a tax on a gift inter vivos. If the property which is now sought to be relieved of the tax imposed by the appraiser had been given by the testator to collateral relatives or strangers not named in the will, how could it be reached to pay the tax? From what time would the tax be due? What penalties would it carry by way of interest? How would it be appraised? As of what date is its value to be appraised? Could the executors be held responsible for what never came to their possession? Surely, it could not be taken from the beneficiaries under the will. It seems clear that the statute is one based on the theory that those having in charge the estate of a decedent should pay taxes on the property in their hands and under their control. Reading the statute as a whole, it seems that it has to do with death and dead men's estates, and that it does not contemplate reaching property transferred by gift or otherwise among the living. The statute is inadequate in its provisions for reaching property not in process of distribution, but which has passed into the hands of donees of gifts inter vivos, and is beyond the reach and control of those in charge of the administration of an estate. Gifts apparently inter vivos may nevertheless have attached to them such conditions and circumstances as clearly bring them within the statute, and I think a fair construction of this act would obviously cover gifts inter vivos where a party is in extremis. That, perhaps, is the extreme to which the act could be stretched, and yet kept within the rule which requires that the state shall show clear warrant for taxing property of the citizen under this special law. Gifts inter vivos, intended to take effect at or after death, are comprehended by this act, and really by the words of the statute, "in contemplation of death." The court of appeals, in Re Seaman's Estate, 147 N. Y. 69, 41 N. E. 401, declared that the statute reaches all gifts causa mortis, and it would seem gifts inter vivos, which are made in extremis, might likewise be included.

It has been earnestly urged on the part of the state that, unless it is held that the gifts, as made by this testator, are declared to be "in contemplation of death," the state will lose thousands of dollars, since any one on the eve of death can transfer property without condition, and defeat the purpose of this act. The testator was, at the time of these gifts, a very wealthy man, and it must be apparent, not alone from the evidence, but the gifts themselves, that he desired to be rid of the burden of his estate, in part at least. If the transfers were made with the intention to deprive the state of the tax due on the property of which he might die possessed, these gifts might well have been of the greater part of what he possessed without retaining upward of $3,000,000. He was a man advanced

in years, and of few personal wants, so that these millions were unnecessary to him. He could readily have defeated the statute without any inconvenience to himself. If this form of disposing of property becomes disastrous to the purposes of the statute, the legislature can easily remedy it by arbitrarily fixing a time from which all gifts may be declared void in so far as relieving them from the tax in question. In Louisiana, "no donations inter vivos or causa mortis can exceed two-thirds of the property, if the disposer, having no children, leave a father, mother or wife." There is no clear warrant in the law for taxing $15,000 from the estate of the testator to pay a tax upon property which had passed beyond the control and custody of the testator irrevocably long before his death. If all the children of the testator, after receiving the gift of $500,000 each, had died before the testator, there would be no question but what it would have been subject to the tax. Could it be claimed that, after their estates had paid the tax on this property, it could again be taxed as a part of the estate of the father, he surviving the children? This seems to be a fair test. So far as the reported cases throw any light on this subject, they seem to sustain the claim that the statute applies to gifts causa mortis, or dispositions of property, like trusts or settlements, intended to take effect after death; but the statute does not seem to warrant the reaching of gifts inter vivos. Manifestly, there can be no warrant for taxing the property of the children, and yet regard it as a part of the estate of the testator. I am satisfied that the statute does not cover the case presented, and that the testator had no interest in the $1,500,000 which he gave to his children long before his death, and therefore the executors cannot be made to pay a tax within the statute, or any decision under it. The decision in Re Birdsall's Estate, 22 Misc. Rep. 180, 49 N. Y. Supp. 450, by the surrogate of Chautauqua county, had to do with a gift causa mortis, as I read it. What is said, therefore, of gifts inter vivos, is obiter dicta to the Birdsall Case. The reason underlying the law, the reasonable construction of the statute itself, the circumstances of this case, and every consideration that should weigh in rendering a judgment between the state and the executors of an estate, alike determine this case in favor of the executors. So much of the appraisers' report as taxes $1,500,000 is hereby set aside.

Decreed accordingly.