In the Matter of the Application to compel payment by the Executors and Legatees of and under the last Will and Testament of Mary McPherson, deceased, of the tax imposed by Chapter 483, Laws of 1885.

A tax, such as is provided for by the act of 1885 (Chap. 483, Laws of 1885), 'to tax gifts, legacies and collateral inheritances in certain cases," may be constitutionally imposed.

Said act is not violative of the provision of the State Constitution (Art. 3, § 20), which provides that every law imposing a tax " shall distinctly state the tax and the object to which it is to be applied." Said provision was intended to apply to the annual recurring taxes known at the time of the adoption of the Constitution and imposed generally on the entire property of the State ; it does not apply to a special tax like that provided for in said act.

The said act provides sufficiently for a notice and hearing, or opportunity to be heard, and so does not invade the constitutional right to " due process of law." (Art. 1, § 6.)

The said act confers no powers upon Surrogates' Courts prohibited by the Constitution; the imposition and collection of the tax, as provided in the act, is simply an incident in the settlement of the estate of a deceased person, and is not so foreign to the jurisdiction generally exercised by said courts as to make the act obnoxious to any constitutional objection.

The fact that the act may not have operation as intended by the legislature in some cases does not affect its validity in the cases where it may operate without difficulty or embarassment.

(Argued January 17, 1887; decided February 1, 1887.)

Appeal from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made September 24, 1886, which affirmed a decree of the surrogate of Albany county, ordering and

directing the payment by the executors and legatees under the will of Mary McPherson, of a tax upon their respective legacies imposed under and pursuant to the act chapter 483, Laws of 1885.

The will of the testatrix, aside from legacies to various charitable institutions, gave legacies amounting to $28,000 to various persons, none of whom stood in any relationship to her specified in said act. The residue of her estate she gave to her executors in trust, to erect a monument to the memory of Robert Burns in Washington Park in the city of Albany.

*John F. Montignani* and *Robert G. Scherer* for appellants. As a special or specific tax, imposed upon the passing of property, the act is invalid. (*Gordon* v. *Cornes*, 47 N. Y. 611; *Wynehamer* v. *People*, 3 Kern. 404; 1 Desty on Tax. 4, § 18, p. 53; *People* v. *Comm.* 76 N. Y. 71; Cooley on Const. Lim. [5th ed.] 613; *Stuart* v. *Palmer*, 74 N. Y. 189, 190; *Pleuber* v. *State*, 10 N. W. Rep. 485; *People* v. *Fire Asso.*, 92 N. Y. 323; *In re Mayor, etc.*, 11 Johns. 77; *Sharp* v. *Speir*, 4 Hill, 82.) The right of bequest or testamentary disposition is a purely natural and essential right, indispensable to the common ordinary right of private property, "the guarantee to individuals of the fruits of their own labor and abstinence." (Mill's Prin. of Pol. Econ., chap. 2, Property, 278, § 1; id. 281, § 4; Essays on Prop. & L. part 3, p. 78; *Remsen* v. *Brinkerhoff*, 26 Wend. 332; *Windham* v. *Chetwynd*, 1 Bur. 414; *Stewart's Ex'r* v. *Lispenard*, 26 Wend. 296; *Lewis* v. *Jones*, 50 Barb. 672.) The right of inheritance is a natural, absolute right, and as such not specially taxable. (1 T. D Woolsey [Pol. Science], § 48.) Chapter 483, as imposing a special tax on the devolution of property, is void, and that it must be considered as a general tax. (2 Locke on Civ. Gov., 124, 134, 135.) The whole act is therefore unconstitutional. (*People* v. *Sup'rs. of Westchester*, 4 Barb. 64, 70 ; *White* v. *White*, 5 id. 484, 485; *Taylor* v. *Porter*, 4 Hill 144, 145; *Sweet* v. *Hulbert*, 51 Barb. 312 ; *Clark* v. *City of Rochester*, 13 How. Pr. 206 ; *Colde* v. *Bruce*,

3 Dallas, 386; *Wynehamer* v. *People*, 3 Kern. 404; *Rockwell* v. *Nearing*, 35 N. Y. 302; *Stewart* v. *Palmer*, 74 id. 188.) The act is invalid as a general law, imposing, an arbitrary tax, not equal or uniform, and which unjustly discriminates between citizens. (Cooley on Const. Lim., 169, 170, 393, 479; *Lexington* v. *McMillan's Heirs*, 9 Dan. 513–516; *Youngblood* v. *Sexton*, 32 Mich. 406; *People* v. *Supr's*, 20 Barb. 81–88; *S. C.*, 16 N. Y. 424, 439; *People* v. *Com'rs*, 76 id. 71; *Stuart* v. *Palmer*, 74 id. 190; *Flatbush Lands*, 60 id. 406, 407; U. S. Const. Am. 14; *In re Van Antwerp*, 56 N. Y. 265; Cooley on Tax'n [2d. ed.], 47; *Hervill* v. *Buffalo*, 37 N. Y. 270; *People* v. *Mayor*, etc., 4 id. 419.) The constitutional validity of the law is to be tested, not by what has been done under it, but by what may, under its authority be done. (*Stuart* v. *Palmer*, 74 N. Y. 188.) As to the purpose of a tax, the power of the legislature is limited and can be reviewed. (*Weismer* v. *Village of Douglas*, 64 N. Y. 97.) The method providing for assessing and collecting the tax may also be examined into, and if not found just, the law be declared void. (*Stuart* v. *Palmer*, 74 N. Y. 183; *People* v. *Eq. T. Co.*, 96 id. 395–396.) The probable effect of a tax law may be considered by the courts, and if deemed arbitrary and oppressive on an individual, citizen or class of citizens, the law be pronounced invalid. (*In re Flatbush*, 60 N. Y. 407; *Gordon* v. *Cornes*, 47 id. 611, 612; *People ex rel. M. F. I. Co* v. *Com'rs*, 76 id. 71.) There are exempt from the legislative power of special taxation (1.) rights expressly protected by the Constitution; (2.) rights by necessary implication so protected; (3.) such natural rights as are reserved to the people themselves and not by the Constitution intrusted as subjects of legislation to the legislature. (Cooley's Const. Lim. 207 [175*]; *Wilkinson* v. *Leland*, 2 Pet. 627–657; *Taylor* v. *Porter*, 4 Hill, 144, 145; *Calder* v. *Bruce*, 3 Dall. 386.) Uniformity and equality are essential to a valid tax. (*In re McMahon* v. *Palmer*, 102 N. Y. 188, 189.) Considered as a tax on property the law is invalid as not providing for a legal apportionment. (Laws of 1885, chap. 483, §§ 6, 9, 23;

*Stuart* v. *Palmer*, 74 N. Y. 183; *People* v. *Eq. T. Co.*, 96 id. 396.) Chapter 483, Laws of 1885, is void as being a law which imposes a tax and does not distinctly state the object to which that tax is to be applied. (Const. N. Y., art. 3, § 20; *Sun Mut. Ins. Co.* v. *Mayor, etc.*, 8 N. Y. 241; *People* v. *Sup'rs of O.*, 27 Barb. 575; 17 N. Y. 235; *Bl'k R. B'k.* v. *Sup'rs Jeff'n*, 27 Barb. 583, *n.*; Const. of 1847, art. 7, § 3; 27 Barb. 584, *n.*; *People* v. *Sup'rs Kings*, 52 N. Y. 556, 557, 559; *People* v. *Home Ins. Co.*, 92 id. 329; *People* v. *F. Ins. Co. Phil.*, id. 327; Cooley's Const. Lim. 116; *Weismer* v. *Village of Douglas*, 64 N. Y. 98.) The law is unconstitutional in that it confers upon the surrogate powers and duties not authorized by, but contrary to, the Constitution. (Const. art. 6 §§15, 16, 25, 27; Const. art. 14, §§ 8, 12; *Landers* v. *Stat. Isl. R. R. Co.*, 53 N. Y. 450; *People* v. *Porter*, 90 id. 71; *People* v. *Gardner*, 45 id. 812; *People* v. *Green*, 58 id. 303; *Delany* v. *Brett*, 51 id. 78; *Wilkins* v. *Earl*, 46 id. 358; *People ex rel. Lent* v. *Carr*, 100 id. 236, 242; Cooley Const. Lim. 177 [5th ed.], p. 211.)

*Leonard G Hun and Eugene Burlingame* for appellants. The constitutional validity of a law is to be tested, not by what has been done under it, but by what may, by its authority, be done. (*Stuart* v. *Palmer*, 74 N. Y. 183.) Where parts only of an act are found to be unconstitutional, but such parts are essential to the existence of the constitutional parts, or are so related to them as to make it evident that the legislature intended them to constitute one whole, so that if all could not be carried into effect no parts thereof would have been enacted by it, the whole act should be declared void. (Bishop on Stat. Cr. [2d ed.] § 34; Cooley on Const. Lim. [5th ed.] 213.) The act of 1885 (Chap. 483), fails to prescribe with that certainty and precision which is essential to the validity of all laws imposing taxes, rules for apportioning determining and collecting the taxes to be imposed upon the various estates and interests specified therein. (Cooley on Tax'n.

[2d ed.] 237, 243, 244; *People* v. *Brooklyn*, 4 N. Y. 419, 426, 427; *State* v. *Com'rs*, 73 Ala. 65, 70; Williams on Ex'rs. [6 Am. ed.], 1696.) Where a future estate or interest in the property of a decedent is given by his will to any person, not absolutely, but only in case he shall be living at a certain time, or at the expiration of a prior estate, or upon the happening of some other uncertain event, the occurrence or non-occurrence of which is dependent upon the will of another person, the estate or interest so acquired by him is not, prior to the happening of the event, upon the occurrence of which the vesting of his title to the estate or interest is dependent, "property" having a "market value;" nor can the legislature impose upon it a tax to be collected from other property of such person not forming part of the decedent's estate, under a judgment to be entered against such person in proceedings instituted to recover the amount of this tax. (*Weismer* v. *Village of Douglas*, 64 N. Y. 91; *Bertholf* v. *O'Reilly*, 74 id. 509–515; *In re Deansville Cemet'y*, 66 id. 569–572; *In re Townsend*, 39 id. 71–174; *In re Jacobs*, 98 id. 110, 111; *Duell* v. *Alvord*, 41 Hun, 196; *Potter* v. *Com'rs*, 10 Exch. 146–155; *Linimer Asphalte* v. *Com'rs*, 7 id. 211; *Hopkins* v. *Folger*, 60 Me. 266, 269; Sedg. on Dam. [7th ed.] 134, note *a.*; Suth. on Dam. 126; 3 id. 154, 155; Mayne on Dam. [Wood's ed.] 87; *Hoey* v. *Telton*, 11 C. B. [N. S.] 142; *Taylor* v. *Bradley*, 4 Abb. Ct. App. Dec., 366; *Wakemay* v. *W. & W. Mf'g Co.*, 101 N. Y. 205.) The rule established by the act for determining the value for the purposes of taxation of future and contingent estates, whether arising by way of remainder, limitation or appointment, is unjust, oppressive and unconstitutional. (Cooley on Const. Lim. [5th ed.] 612, 613, 622; Cooley on Tax. [2d ed.] 237, 352, 493–513; *People* v. *Salem*, 20 Mich. 452–472; *State ex rel.* v. *Rondout*, 36 N. J. L. 66–70; *Lexington* v. *McQuillin's Heirs*, 9 Dana [Ky.], 513, 517; *Woodbridge* v. *Detroit*, 8 Mich. 274, 301; *Stuart* v. *Palmer*, 74 N. Y. 188, 189, 190; *People* v. *Dry Dock Co.*, 11 Abb. [N. C.] 40; *S. C.*, 92 N. Y. 487; *Gordon* v. *Cornes*, 47 N. Y. 608, 612; *People* v. *Eq. T. Co.*, 96 id.

387; *In re Jacobs*, 98 id. 98, 111, 256, 257 ; *Portland Bank* v. *Apthorp*, 12 Mass. 252 ; *Com'rs.* v. *People's Sav. Bk.*, 5 Allen, 428, 431 ; *Com'rs.* v. *Ham. Mf'g. Co.*, 12 id. 298, 301 ; *Bank* v. *Hines*, 3 O. St. 1, 15 ; *Att'y Gen.* v. *Winn. Lake Co.*, 11 Wis. 35.) The legislature intended by this act to impose a tax on "property," the amount of which tax is to be determined by the "clear market value" of such property. (*Eyre* v. *Jacob*, 14 Gratt. 422, 428, 429, 436 ; *Tyson* v. *State*, 28 Md. 577 ; *Strode* v. *Com'rs*, 52 Penn. 183 ; *U. S.* v. *Allen*, 9 Ben. 154 ; *People* v. *Eq. T. Co.*, 96 N. Y. 387 ; Cooley on Tax. [2d ed.] 430.) The act violates the provisions of section 6 of article 1 of the Constitution, providing that no man shall be deprived of life, liberty or property without due process of law, in that it does not require that notice shall be given to the persons upon whom the taxes are to be imposed of the appraisement of their property, or the fixing and determining of the value of their estates or interests therein, or afford them a reasonable opportunity to be heard. (Cooley on Const. Lim. [5th ed.] 496, note 2 ; Cooley on Tax. [2d ed.] 51, 361, 366 ; *Stuart* v. *Palmer*, 74 N. Y. 183, 188 ; *Ireland* v. *Rochester*, 51 Barb. 414, 430, 431 ; *Blazier* v. *Miller*, 10 Hun, 437 ; *Railroad Tax Case* v. *Sawyer*, 8 Sawyer, 238 ; *Davidson* v. *N. Orleans*, 96 U. S. 97 ; *Hagar* v. *Rec. Distillery No.* 108, 111 id. 701, 709–711 ; *Stinger* v. *Com'rs*, 26 Penn. 422.) The restrictions imposed by section 20 of article 3 of the Constitution upon the power of the legislature to levy taxes were intended to benefit and protect the taxpayers of the State, and it is the duty of the court to so construe and enforce them as that their rights and interests may be fully cared for and preserved. (*People ex rel. Hopkins* v. *Sup'rs. of Kings*, 52 N. Y. 556, 566 ; *Sharp* v. *Speir*, 4 Hill, 76 ; *Newell* v. *Wheeler*, 48 N. Y. 486 ; *Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend. 9–53.) The construction demanded by the terms of the Constitution should be adopted by the courts, regardless of the consequences. (*Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend. 9–52 ; *People* v. *Morrell*, 21 id. 563–584; *Newell* v. *People*, 7 N. Y. 9–109 ; *Settle* v. *Van Evrea*, 49 id.

280, 281.) The act violates section 20 of article 3 of the Constitution, which requires that every law which imposes, continues or revives a tax shall be so framed as that the courts and taxpayers can ascertain both the amount of the tax and the object to which it is to be applied, from a simple inspection of the act itself, without being compelled to resort to any other law. (Deb. Const. Conv., Cross. & Sutt. 727; *People ex rel. Hopkins* v. *Sup'rs of ·Kings*, 52 N. Y. 556–566; *Bl'k R. Bk.* v. *Sup'rs Jeff. Co.*, 27 Barb. 583; *People* v. *Sup'rs Orange Co.*, id. 575; *People* v. *Home Ins. Co.*, 92 N. Y. 328.) The statement that the taxes imposed by the act shall be " paid to the treasurer of the proper county, and in the city and county of New York to the comptroller thereof for the use of the State " (Laws of 1885, chap. 483, § 1), is not a sufficient statement of the object to which the tax is to be applied to satisfy the requirements of the Constitution. (*People* v. *Sup'rs of Chen. Co.*, 4 Seld. 317; *Darlington* v. *Mayor, etc.*, 31 N. Y. 186.)

*Albert G. McDonald* for appellants. The charge created by the act of 1885 (Chap. 483), is a tax such as comes within the constitutional provision, section 20, article 3. (1 Abb. L. Dict. 409; 1 Burrill's L. Dict. 407; Cooley on Tax. 3, 5; Bigelow's Life of Franklin, 479, 481, 504; *Westinghausen* v. *People*, 44 Mich. 267.) The act in question does not distinctly state the object to which the tax is to be applied. (*Sun Mut. Ins. Co.* v. *City of N. Y.*, 10 Sand. 15; *People* v. *Sup'rs of Orange Co.*, 17 N. Y. 235; *People* v. *Home Ins. Co.*, 92 id. 328; *People* v. *Sup'rs of Kings Co.*, 52 id. 566, 568, 569.) When a statute is challenged as in conflict with the fundamental law, a clear and substantial conflict must be found to exist to justify its condemnation; but when found, courts must not hesitate to condemn. (*Walcott* v. *People*, 17 Mich. 76; *In re N. Y. El. R. R. Co.*, 3 Abb. [N. C.] 401, 413.) The tax in question here is a general tax for State purposes, as opposed to a local tax for local objects. (10 Sandf. 14; *People* v. *Sup'rs of Chenango*, 8 N. Y. 326, 327.)

*James E. Kelly* for appellants. The act of 1885 (Chap. 483), violates section 20, of article 3 of the Constitution, in that it does nôt distinctly state the object to which the tax provided for shall be applied. (*A. T. & S. F. R. R. Co.* v. *Woodcock*, 18 Kan. 20; *People* v. *Sup'rs of Kings Co.*, 52 N. Y. 556.)

*Robert Sewell* for appellants. The constitutional requirement (Art. 3, § 20), with regard to stating the object to which the tax shall be applied, is not met by the law of 1885 (Chap. 483). (*People* v. *Sup'rs of Orange Co.*, 17 N. Y. 235; *People* v. *Home Ins. Co.*, 92 id. 326.)

*E. L. Fancher*, *John E. Parsons*, *Charles A. Davison* and *S. B. Brownell* for appellants. The Constitution requires that " every law which imposes, continues or revives a tax shall distinctly state the tax and the object to which it is to be applied, and it shall not be sufficient to refer to any other law to fix such tax or object." (Const., art. 3, § 20; *People* v. *Supr's of Kings Co.*, 52 N. Y. 566.) The terms employed in the act are in effect a delegation of legislative authority, for not having been previously defined by the legislature and being incapable of definition, the disposition of the tax is left to the arbitrary discretion of the comptroller. For this reason the act is unconstitutional and void. (*People* v. *Supr's of Kings Co.*, 52 N. Y. 556, 557, 559.) The words, " to the use of the State," in the act are so vague and indefinite that they require to be made clear by supplementary legislation. (*People* v. *Supr's. of Kings Co.*, *supra*.) The act of 1885 is in contravention of the constitutional provision that requires every law that imposes a tax to distinctly state the object to which it is to be applied. (*People* v. *Sup'rs. of Orange Co.*, 17 N. Y. 235; *People* v. *Sup'rs. of Kings Co.*, *supra*; *People* v. *Home Ins. Co.*, 92 N. Y. 328.)

*Horace Russell* for appellants. The act is unconstitutional in that it does not sufficiently state the object to which the tax is to be applied without referring to other laws to fix such

object. (Const., art. 3, § 20; Deb. Const. Conv. 1846, Cross-well & Sutton, 727; *People* v. *Home Ins. Co.*, 92 N. Y. 328; 3 Abb. Ct. App. 539.) The statement of the object of the tax involves a delegation of legislative duty. It is, therefore, unconstitutional. (*People* v. *Sup'rs of Kings Co.*, 52 N. Y. 556; Cooley's Const. Lim. 116.)

*Hugh Reilly*, district attorney, and *Mark Cohn* for respondent. Courts will not determine a statute to be unconstitutional except in a very clear and certain case, nor will they restrain or hamper, without obvious necessity, the scope and range of the legislative authority. (*People* v. *Fire Ass'n of Phil.*, 92 N. Y. 324; *People* v. *Sup'rs of Orange Co.*, 17 id. 241; *People* v. *Home Ins. Co.*, 92 id. 344, 345; *Walcott* v. *People*, 17 Mich. 68.) The Law of 1885 (Chap. 483, sufficiently states the object to which the tax is to be applied. (*People* v. *Home Ins. Co.*, 92 N. Y. 335; Const., art. 7, § 2; 1 R. S. 493; id. [7th ed.] 496, 500, 501; *People* v. *Sup'rs of Orange Co.*, supra; *S. C.*, 27 Barb. 593; 2 R. S. [7th ed.] 1276, §§ 32, 33.) The provisions of section 20 of article 3 of the Constitution are intended to apply only to laws levying a tax on property; and do not apply to the duty or tax required to be paid by this law. (*People* v. *Moring*, 3 Abb. Ct. App. 539; *Sun Mut. Ins. Co.* v. *City of N. Y.*, 5 Sandf. 10, 14; *Westinghausen* v. *People*, 6 N. W. Rep. 641; 13 U. S. Stat. at Large, 285, §§ 124–126; id. 287, §§ 126–151; *Wright* v. *Blakeslee*, 101 U. S. 174; *Springer* v. *U. S.*, 102 id. 586; *Strode* v. *Comm.* 52 Penn. St. 181, 188; *Clymers* v. *Comm*, id. 185; *Carpenter* v. *Comm. of Pa.*, 17 How. [U. S.] 456; *In re Short*, 16 Pa. St. 63; *Eyre* v. *Jacob*, 14 Gratt. 422; *Miller* v. *Comm.* 27 id. 110, 117; *Tyson* v. *State*, 28 Md. 578.) The taxing power of the legislature, except as restrained by the express provisions of the Constitution, may be said to be unlimited. (Cooley on Tax. 5, 7; *People* v. *Mayor of Brooklyn*, 4 N. Y. 429; *Bertholf* v. *O'Reilly*, 74 id. 509–515; *Stuart* v. *Palmer*, id. 183–188; *Walcott* v. *People*, 17 Mich. 68; *People* v. *Eq. T. Co.*, 96 N. Y. 387,

396; *International Bk.* v. *Bradley*, 19 id. 245, 250; *Haynes* v. *James*, 17 id. 316; *People* v. *Main*, 20 id. 434; *In re Trustees of N. Y. P. E. Pub. School*, 31 id. 574, 580.) The right to inherit or succeed to property is not an inherent, natural, or an absolute right; neither is the right to dispose of property after one's death by bequest or devise. These rights are clearly all the creatures of the civil or municipal laws, and accordingly are in all respects regulated by them. (2 Blackst. Com. 10, 11, 12, 13.) The State may change and modify them at any time, or abolish them altogether. (*Eyre* v. *Jacob*, 14 Gratt. 422; *Miller* v. *Comm.* 27 id. 110, 117; *Strode* v. *Comm.* 52 Pa. St. 181; *Clymers* v. *Comm.* id. 185; *Tyson* v. *State*, 28 Md. 578; *In re Short*, 4 Harris, 63; 3 R. S. [7th ed.] 2213, § 19; *Miller* v. *Miller*, 18 Hun, 507.) None of the various objections in this case can be raised by any of the appellants. None of them are relatives of the deceased. They are all strangers, and no vested rights of theirs are affected. (Laws of 1865, chap. 368, § 6; Laws of 1875, chap. 343, § 5; Cooley on Const. Lim. [3d ed.] 163, 164; *Sinclair* v. *Jackson*, 8 Cow. 543.)

EARL, J. Mary McPherson died in the city of Albany on the 6th day of February, 1886, leaving a will which was admitted to probate by the surrogate of Albany county. In her will she bequeathed legacies to various persons who were in no way related to her, and upon the petition of the district attorney of that county the surrogate ordered the executors named in the will to pay the succession tax imposed by chapter 483 of the Laws of 1885. The executors and several of the legatees appealed from the decision of the surrogate to the General Term and from affirmance there to this court. The claim on the part of the appellants is that the act of 1885 is, for various reasons, unconstitutional and void, that the tax was not, therefore, lawfully imposed, and that its collection and payment cannot be rightfully enforced.

The first section of the act provides that " after the passage

of the act all property which shall pass by will, or by the intestate laws of this state from any person who may die seized or possessed of the same while being a resident of the State, or which property shall be within this State, or any part of such property, or any interest therein, or income therefrom, transferred by deed, grant, sale or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor, to any person or persons, or to a body politic or corporate, in trust or otherwise, or by reason whereof any person or body politic or corporate shall become bene-ficially entitled, in possession or expectancy, to any property or the income thereof, other than to or for the use of father, mother, husband, wife, children, brother and sister and lineal descendants born in lawful wedlock, and the wife or widow of a son and the husband of a daughter, and the societies, cor-porations and institutions now exempted by law from taxation, shall be and is subject to a tax of $5 on every $100 of the clear market value of such property, and at and after the same rate for any less amount, to be paid to the treasurer of the proper county and in the city and county of New York to the comptroller thereof, for the use of the State, and all administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed."

We entertain no doubt that such a tax can be constitution-ally imposed. The power of the legislature over the subject of taxation, except as limited by constitutional restrictions, is unbounded. It is for that body, in the exercise of its discre-tion, to select the objects of taxation. It may impose all the taxes upon lands, or all upon personal property, or all upon houses or upon incomes. It may raise revenue by capitation taxes, by special taxes upon carriages, horses, servants, dogs, franchises and upon every species of property and upon all kinds of business and trades. (*People* v. *Mayor of Brooklyn*, 4 N. Y. 419 ; *Stuart* v. *Palmer*, 74 id. 183 ; *People* v. *Equitable Trust Co.* 96 id. 387 ; *Portland Bk.* v. *Apthorp*, 12 Mass. 252 ; Cooley on Taxation 7.) Taxes upon legacies and inherit-

ances have been approved generally by writers upon political economy and systems of taxation, and no tax can be less burdensome and interfere less with the productive and industrial agencies of society. Such taxes were imposed in Rome two thousand years ago, and are now imposed in England and several of the continental countries of Europe, and in the States of Pennsylvania, Maryland and Virginia, and perhaps other States of this country. (*Williams' Case,* 3 Bland's Ch'y R. 186, 259; *Eyre* v. *Jacobs,* 14 Gratt. 422; and in 1864 (13 U. S. Stats. at Large, 287) a tax was imposed by the Federal government upon successions to real estate. The acts imposing such taxes have frequently come before the courts and have uniformly been upheld. (*Carpenter* v. *Comm. of Penn.* 17 How. 456; *Scholey* v. *Rew,* 23 Wall. 331; *Clapp* v. *Sampson,* 94 U. S. 589; *Wright* v. *Blakeslee,* 101 id. 174; *Mason* v. *Sargent,* 104 id. 689; *In re Short's Estate,* 16 Pa. 63; *Stinger* v. *Comm.,* 26 id. 422; *Comm.* v. *Freedley,* 21 id. 33; *Strode* v. *Comm.,* 52 id. 181; *Miller* v. *Comm.,* 27 Gratt. 110; *Tyson* v. *State,* 8 Md. 578; *State* v. *Dorsey,* 6 Gill, 388; *Williams' Case,* Bland's Ch. R. 186.) The case of the *State* v. *Dorsey,* was a curious one, possible only under a state of society long since passed in this country. There the bequest of freedom to a slave was held to be a legacy within the meaning and operation of the Maryland act imposing taxes upon legacies, and the executor was compelled to pay it.

It is not very important to determine in this case whether the act of 1885 is to be regarded as imposing a tax upon property or upon the succession or devolution of property by will or intestacy. In either case it is a special tax. In the one case it is a tax upon the particular class of property, and in the other case a tax upon the succession or devolution of property, or the right to receive property in the cases mentioned in the statute. Whether it be one or the other it is free from constitutional objection. It has never been questioned that the legislature can impose a tax upon all sales of property, upon all incomes, upon all acquisitions of property, upon all business and upon all transfers. Taxes of a similar

character were quite extensively imposed by the acts of congress passed during the late civil war. If this be regarded as a tax upon property, then it is free from constitutional objection if it be equally imposed and properly apportioned upon all the property of the class to which it belongs. A tax imposed for the general welfare upon a particular house, or the houses of a particular neighborhood, would be amenable to constitutional objection, but if imposed upon all the houses in the State, then it is a tax imposed upon all the property of that class, and is amenable to no objection.

It is also objected that this tax is not constitutionally imposed because there is no compliance in the act with section 20 of article 3 of the Constitution of this State, which provides that "every law which imposes, continues or revives a tax shall distinctly state the tax and the object to which it is to be applied, and it shall not be sufficient to refer to any other law to fix such tax or object." Section 1 of this act requires that this tax shall be paid "for the use of the State," and this is the only designation of the object to which the tax is to be applied. If we were obliged to hold that this constitutional provision is applicable to this case, we should have difficulty to determine that the object of the tax is sufficiently stated. It has been held that the object is sufficiently stated if the act imposing a tax provides that it shall be paid to the credit of the general fund. (*People* v. *Sup'rs of Orange Co.*, 17 N. Y. 239; *People* v. *Home Ins. Co.*, 92 id. 335.) The decision which first announced this doctrine greatly impaired the value of the constitutional provision, because when the tax has once been paid into the general fund it may be appropriated by the legislature to any of the innumerable objects, ordinary and extraordinary, for which the State may need money; and thus any information given to members of the legislature, or to taxpayers, by such a statement of the object of the tax, is more illusory than real. But it must be assumed that the constitutional provision still has some value, and it should not be entirely nullified by judicial construction, as it would be if we should hold that this act sufficiently states

the object of the tax within the meaning of the Constitution. But we are of opinion that this section of the Constitution is not applicable to this case. In terms it applies to every tax which the legislature can impose, and is not confined to a property tax. It is not even by its terms confined to a general tax embracing the whole State; but the language, literally construed, is broad enough to embrace every local tax imposed for local purposes. As stated above, taxes may be imposed upon a great variety of objects. They may be direct or indirect, special or general, and they may be imposed in the shape of excise and licenses, upon hawkers, peddlers, auctioneers, insurance agents, liquor dealers and others. All the contributions for the support of the government, enforced from individuals in the various ways mentioned, are, properly speaking, taxes. Notwithstanding the general language of the section referred to, we do not think it was intended to apply to every tax which the legislature could impose, and so it has been held.

The object of the constitutional provision was to convey information to the members of the legislature and to the people, and it should have a practical construction, with a view to accomplish its purpose so far as attainable, and to carry out the policy which we may assume dictated it.

The tax imposed by this act is a permanent one. It is always uncertain upon whom it will fall and how much revenue it will produce. It would have been impossible for the legislature, perhaps years in advance, to specify the particular objects to which the tax should be applied, and we are of opinion that this section of the Constitution was intended to apply to the annual recurring taxes known at the time of the adoption of the Constitution and imposed generally upon the entire property of the state. The legislature would know definitely the objects for which such taxes were imposed, and could anticipate, with some certainty, the amount which they would produce; and in their imposition it was deemed important by the framers of the Constitution that the object of the tax should be stated. But we do not think that the policy embodied in the section had any reference to special

taxes which may be collected in a variety of ways under general laws, such as auction duties, excise duties, taxes on business or particular trades, avocations or special classes of property. It has been held in several states where constitutional provisions required that property taxes should be equal and uniform, that such provisions had reference only to general, annual recurring taxes upon property generally, and not to special taxes upon privileges or special or limited kinds of of property. It was said in *Sun Mutual Insurance Company* v. *City of New York* (5 Sand. R. 10), by OAKLEY, Ch. J., in speaking of this constitutional provision, that it might be " seriously doubted whether it ought not to be construed as relating exclusively to the imposition of a general tax for State purposes, and not at all to the imposition of a local tax for local objects." In *People* v. *Moring* (3 Abb. [N. Y. Ct. App., Dec.] 539), the court had under consideration the acts of 1846 and 1866, imposing duties upon auctioneers and brokers, and the acts were challenged as in contravention of this section of the Constitution, and HUNT, J., writing the opinion of the court, expressed concurrence with the intimation of Judge OAKLEY in the case last cited, and said that this section " was not intended to be applied to laws which impose duties, fees or excises on particular professions, classes of trades or individuals, but that the same relates only to a general tax upon the property of the State ; " that " this section, I have no doubt, contemplates a general tax upon all the property of the State and was not intended to be satisfied with, or to apply to a local tax upon a particular section, or to a tax imposing fees or duties upon trades or individuals, although the same are direct taxes equally as if imposed upon the entire property of the State." It was said by FINCH, J., in *People* v. *Fire Association of Philadelphia* (92 N. Y. 311), that the tax covered by the constitutional provision is one general in its provisions and coextensive with the State.

It is thus seen that there are cases where the language of this section of the Constitution must be restricted by construction, and we think this is one of them.

This tax is imposed according to the value of the legacy and collateral inheritance liable to be taxed, and hence there must be some mode of ascertaining that value; and for that purpose judicial action is requisite at some stage of the proceeding before the liability of the taxpayer becomes finally fixed. He must have some kind of notice of the proceeding against him, and a hearing or an opportunity to be heard in reference to the value of his property, and the amount of the tax which is thus to be imposed. Unless he has these, his constitutional right to due process of law has been invaded. (*Stuart* v. *Palmer*, 74 N. Y. 183; *County of San Mateo* v. *S. Pac. R. R. Co.*, 8 Sawyer, 238; *Hagar* v. *Dist. No.* 108, 111 U. S. 701.) This act is assailed as unconstitutional and void because it is claimed it does not give the taxpayer such notice and hearing.

While the provision for notice is not as clear and explicit as it might have been, yet we are constrained to believe that it is sufficient. Section 13 provides that : " In order to fix the value of the property of persons whose estates are subject to the payment of the tax, the surrogate, upon the application of any interested party, or upon his own motion, shall appoint some competent person as appraiser as often as and when occasion may require, whose duty it shall be forthwith to give such notice by mail, and to such persons as the surrogate may by order direct, of the time and place he will appraise such property, and at such time and place to appraise the same at its fair market value and make a report thereof to the surrogate, together with such other facts in relation thereto as the surrogate may by order require, to be filed in the office of the surrogate; and from this report the surrogate shall forthwith assess and fix the then cash value of all estates, annuities and life estates or term of years growing out of said estate, and the tax to which the same is liable, and shall immediately give notice thereof by mail to all parties known to be interested therein." With a view of upholding the constitutionality of the act, this and all the other sections of the act must be liberally construed, as no act of the legislature

may be condemned as unconstitutional, if by fair implication or any just construction of its language it can be upheld. The surrogate who has admitted a will to probate, or granted letters of administration, will ordinarily have in his possession information as to the persons interested in the estate to be administered; and hence this section imposes upon him the duty of selecting the persons to whom notice is to be addressed by the appraisers; and, as all persons interested are entitled to notice, it is a fair inference that it was intended that he should direct notice to be given to all such persons. He is a judicial officer in whose court proceedings are conducted in an orderly manner, and all persons interested in any question to be determined by him are entitled to notice and a hearing. It was intended that this proceeding for the imposition of a tax should be conducted in an orderly way as is required in other proceedings in his court. Therefore, when the section provides that he shall designate by order to whom the notice is to be given, it is necessarily implied that he shall designate all the persons entitled to notice. If he should omit to do so, it would be an error on account of which any tax imposed upon the person not notified or heard would be invalid as having been imposed without jurisdiction.

It is also provided, that, immediately after he has assessed the tax, the surrogate shall "give notice thereof by mail to all parties known to be interested therein." This gives a further opportunity to the taxpayer to be heard. Upon receiving the notice, if he has had no prior notice or hearing, he may apply to the surrogate and ask for one, and it would be his duty to grant it. The proceeding is in court before a judicial officer and whatever a taxpayer can ask as a matter of constitutional right, it is the duty of the surrogate to grant.

Then there is the right of appeal provided for in the same section. Any person dissatisfied with the appraisement or assessment may appeal therefrom to the surrogate of the proper county, on paying or giving security to pay all costs and the tax as fixed by the court. Upon such appeal there is another opportunity to be heard. The appeal is not limited to

questions of law, but may be taken to the surrogate upon both the law and the facts, and he has ample power to correct any error brought to his attention. For the purpose of making such correction, he is not bound by the estimate of the appraisers, or by the facts which appeared before him; but he may hear such new evidence and allegations as may be properly presented to him.

There is still further opportunity to be heard under section 16 of the act. It is there provided, that, if it shall appear to the surrogate's court, that any tax accruing under the act has not been paid, according to law, it shall issue a citation, citing the persons interested in the property liable to the tax before the court on a day certain, not more than three months after the date of such citation, and show cause why the tax should not be paid; that the service of such citation, and the time, manner and proof thereof, and the hearing and determination thereon, and the enforcement of the determination or decree shall conform to the provisions of the Code of Civil Procedure for the service of citations now issuing out of surrogates' courts, and the hearing and determination thereon and its enforcement. So, too, under this section, after the tax has been imposed, no person can be compelled to pay it until a citation has been regularly served upon him and he has had ample opportunity to be heard. Upon the return of the citation, it is not specified in the section what cause can be shown against the payment of the tax; but it is clear that the person thus cited may allege any reason whatever which shows that he ought not to pay it. He may answer that he has not had an opportunity to be heard upon the appraisal, and that, therefore, the tax as to him is void. He may show any error affecting the validity of the tax, or that he has never received and never will receive the inheritance or legacy; and it would undoubtedly be a justification for refusing to pay that he had absolutely renounced and refused to accept or receive the inheritance or legacy. If the surrogate should err in his decision, there would be the right of appeal to the Supreme Court, and the

same right which parties have in other cases to bring to this court for review the decisions of surrogates' courts.

So, in all of these modes we think there is sufficient provision for notice and hearing for all parties interested in the tax, and we have no doubt that the act secures to every taxpayer due process of law so far as it is applicable to cases of taxation.

It is also objected that the act confers powers upon surrogates' courts not authorized by and contrary to the Constitution. There is nothing in the Constitution which in any way specifies or defines the powers or duties of surrogates. They are recognized in various sections of the Constitution and they have been known to the laws of the State since the foundation of our government. Their jurisdiction has from time to time been defined in the statutes, and from time to time extended and enlarged. Surrogates' courts have always had jurisdiction of the administration, adjustment and settlement of the estates of deceased persons, and the imposition and collection of this tax are simply incidents in the final settlement and adjustment of such estates, and are in no way foreign to the jurisdiction which has generally been exercised by such courts, certainly not so foreign as to make the act obnoxious to any constitutional objection.

The learned brief submitted by Mr. Hun, on the part of the appellants, points out many imperfections in this act, and shows that there will be great embarrassment and difficulty in executing the act in the cases of contingent remainders and expectant estates, and in some other cases. The criticisms made by him upon the act are well worthy of the attention of the legislature. But even if in ome of the respects pointed out by him it should be found that the act is inoperative and impracticable, yet on that account we see no reason for condemning the entire act. If it should be wholly inoperative in cases of contingent and expectant estates and in some other cases mentioned by him, yet it can operate without difficulty or embarrassment in the great majority of cases coming within its purview; a majority of persons having

property die intestate, and a majority of those disposing of property by will do it by simple bequests or devises, and the cases of contingent and expectant estates are not very common. There is no reason, therefore,. for condemning the whole act because possibly in some cases it could not have operation according to the intent of the legislature. We cannot say that the legislature would not have enacted it if they had known that it would be confined in its operation to simple cases of intestacy and wills containing nothing but absolute devises and bequests, as to which there is no difficulty or embarrassment in executing the act.

We are, therefore, of opinion that there is no constitutional objection to this act which affects this case, and that the judgment should be affirmed, with costs.

All concur except RAPALIO, J., not voting.

Judgment affirmed.