possessing original jurisdiction, where an appeal therefrom to a court other than the supreme court is not expressly given by statute." Title 4. Appeals "to the general term of the supreme court, or of a superior city court, from a final judgment rendered in the same court." Title 5. Appeals "to the general term of the supreme court, or of a superior city court, from an order affecting a substantial right, made in a special proceeding," at a special term, etc., of the same court.

*J. Homer Hildreth, pro se. Albrecht J. Lerche, pro se.*

---

## *In re* VANDERBILT'S ESTATE.

### (*Surrogate's Court, New York County.* April 21, 1890.)

**1. DESCENT AND DISTRIBUTION—LEGACY TAXES—NOTICE OF APPRAISEMENT.**
Laws N. Y. 1885, c. 483, relating to the legacy tax, requires (section 17) the county comptroller, whenever he has reason to believe that any tax is due and unpaid, to notify the district attorney, who shall then institute proceedings to collect it. Section 13 provides that the surrogate shall appoint an appraiser, and order him to give notice, to such persons as may be designated by the surrogate, of the time and place at which he will appraise the property. *Held*, that it is the surrogate's duty to order the appraiser to notify all persons interested in the imposition of the tax, including the legatees, district attorney, and comptroller.

**2. SAME—LIMITATIONS.**
Laws N. Y. 1885, c. 483, entitled "An act to tax gifts, legacies," etc., imposes a tax on the devolution of property; and hence Code Civil Proc. N. Y. § 384, requiring all actions to recover a statutory penalty or forfeiture to be brought within two years after the cause of action accrues, has no application to a proceeding to enforce such a tax.

**3. SAME—PERSONAL LIABILITY OF EXECUTORS.**
Laws N. Y. 1885, c. 483, § 1, provides that the executors shall be liable for legacy taxes until they have been paid. Section 6 requires the executor to deduct the tax from any money in his possession before paying legacies therewith, and provides that he shall not be compelled to deliver any specific legacy until he has collected the tax thereon. Section 8 provides that the executor shall not be discharged from liability for the tax until he shall produce the comptroller's receipt therefor. *Held*, that the executor is personally liable for the payment of the tax, and that he must account therefor on the final settlement and adjustment of the estate.

**4. SAME—RES ADJUDICATA.**
On the application of executors, an appraiser was appointed to appraise the property of an estate subject to the legacy tax; and, after notice of the time and place of appraisement, he made his report. *Held*, that a confirmation of the report by the surrogate, after due notice to the comptroller, is such an adjudication of the question as will relieve the executors from personal liability for taxes on other legacies which the appraiser had without authority considered as exempt, and which he had not included in his report, and that the state could look only to the omitted legatees for these taxes.

**5. SAME—EXEMPTIONS—ALMSHOUSE.**
A charitable institution which maintains a home and provides lodgings and meals free, but which also maintains a day nursery for which it makes a small charge, is not a pure charity, and hence is not exempt from the legacy tax as an almshouse.

**6. SAME—CHRISTIAN HOME FOR INTEMPERATE MEN.**

Laws N. Y. 1881, c. 546, as amended by Laws N. Y. 1888, c. 523, § 7, which exempts the Christian Home for Intemperate Men from "local taxation or other purposes," does not exempt it from state taxation, and hence a bequest to it is subject to the legacy tax.

**7. SAME—MUSEUM OF ARTS AND NATURAL HISTORY.**

The Metropolitan Museum of Art and the American Museum of Natural History, which derive an income from membership and admission fees, from the sale of books, specimens, etc., and from investments of property left by will, are subject to taxation, under Rev. St. c. 13, tit. 4, § 1, which provides for the taxation of all moneyed corporations deriving an income from their "capital or otherwise;" and hence legacies to them are not exempt from taxation under Rev. St. c. 13, tit. 1, § 4, subd. 7, exempting the personal property of every incorporated company not made liable to taxation by title 4.

Application to assess taxes on legacies given by the will of William H. Vanderbilt, deceased.

Laws N. Y. 1885, c. 483, entitled "An act to tax gifts, legacies," etc., provides (section 13) that, in order to fix the value of property of persons whose estates are subject to the payment of the tax, the surrogate, on the application of any interested party or on his own motion, shall appoint some competent person as appraiser as often as and when occasion may require, whose duty it shall be forthwith to give such notice by mail, and to such person as the surrogate may by order direct, of the time and place he will appraise such property, and at such time and place to appraise the same at its fair market value, and make a report thereof to the surrogate. Code Civil Proc. N. Y. § 384, provides: "An action upon a statute, for a forfeiture or penalty to the people of the state," must be brought within two years after the cause of action accrues.

*Evarts, Choate & Beaman,* for the Metropolitan Museum of Art and American Museum of Natural History. *Cephas Brainerd* and *Timothy Davenport,* for the Young Men's Christian Association. *Edmund A. Baylies,* for the Protestant Episcopal Missionary Society for Seamen. *Miller, Peckham & Dixon,* for St. Luke's Hospital. *Davies & Rapallo,* for the Domestic & Foreign Missionary Society of the Protestant Episcopal Church. *Anderson & Howland,* for the executors. *William Ives Washburn,* for the New York Christian Home for Intemperate Men. *G. R. Schieffelin,* for the New York Protestant Episcopal City Mission Society. *Stearns & Curtis,* for the Home for Incurables. *Benjamin F. Dos Passos,* for the District Attorney.

RANSOM, S.   This is a proceeding brought by the district attorney to have the tax assessed and fixed upon certain cash legacies given to various charitable institutions by the will of William H. Vanderbilt, deceased. The said decedent also left legacies to certain individuals, upon which the tax was assessed and fixed by an order of the surrogate entered in June, 1888, confirming the report of the appraiser, filed in December, 1887. No notice of the appraisement was ever given to the comptroller or district attorney, or to the institutions now sought to be subjected to the tax. It is clear that each was entitled to such notice. Judge EARL, in *Re McPherson,* 104 N. Y. 306, 10 N. E. Rep. 685, says: "When the section provides that he shall designate by order to whom the notice is to be given, it is necessarily implied that he shall designate all the persons entitled to notice. If he should omit to do so, it would be an error, on account of which any tax imposed upon the person not notified or heard would be invalid as having been imposed without jurisdiction." It has been the uniform practice in this court for the district attorney to make the application himself on behalf of the state, and the statute seems to be clear upon that point. By section 17 of the act the comptroller is required, whenever he has reason to believe that any tax is due and unpaid, to notify the district attorney; and the district attorney, so notified, if he has

probable cause to believe a tax is due and unpaid, shall prosecute the proceeding, etc. He is a public official, and in these proceedings is directly representing the state. *In re Arnett*, 2 N. Y. Supp. 428.

There is nothing to show that the question of liability of these institutions was ever considered. except a statement by the appraiser in his report, that, with the exception of two legacies, "and certain other legacies to corporations, which are by law exempted from tax, the only bequests  *  *  *  consist of annuities," etc. This assumption of the exemption of these corporations is declared by the appraiser in his affidavit to be based upon the idea that the former surrogate considered that all corporations, religious and charitable, were exempt, but there is nothing to show that this question was ever really considered by the surrogate.. The appraiser has no right to declare exemptions. See *In re Astor*, 2 N. Y. Supp. 630. That is the duty of the surrogate.

It is settled law that this tax is upon the passing of property, upon the privilege of receiving it, and not upon the property itself. See *In re Howard*, 5 Dem. Sur. 483; *Wallace* v. *Myers*, 38 Fed. Rep. 184. This being a tax upon the devolution of property, section 384 of the Code of Civil Procedure does not apply.

The liability of executors for the tax seems to be certain. Section 1 of the act provides that they shall be liable for any and all such taxes until the same shall have been paid. Section 6 requires an executor, having in charge or trust any legacy or property for distribution subject to said tax, to deduct the tax therefrom if it be money; and further provides that he shall not be compelled to deliver any specific legacy or property subject to tax until he has collected the tax thereon. Section 8 requires the payment to the comptroller, within 30 days, of any such sum retained for the tax; and further provides that the executor shall not be entitled to credit in his account, nor discharged from liability for such tax, until he shall produce a receipt sealed and countersigned by the comptroller. In was held in *Re McPherson, supra*, that the imposition and collection of this tax are simply incidents in the final settlement and adjustment of estates. That being so, the surrogate has power to compel the payment of the tax, as he has power to compel the payment of the legacy. I have already so held in *Re Prout*, 3 N. Y. Supp. 831.

It appears that on the 10th day of November, 1887, the executors instituted appropriate proceedings before my predecessor for the ascertainment of the tax, if any, upon all the property passing by this will. An appraiser was appointed by Surrogate ROLLINS, on the 10th day of November, 1887, "to appraise all the property which shall pass by the will of the said William H. Vanderbilt, deceased, and is subject to taxation pursuant to chapter 483 of the Laws of New York of 1885. It is further ordered that the said appraiser make a report thereof, in writing, to the surrogate, of the value of the property passing under each legacy contained in said will, which is subject to taxation as aforesaid; together. with a statement of the name of parties whose interests are subject to the said tax, the amount thereof, and of the tax thereon, and of the facts upon which such appraisal and report shall be founded; and that he give at least five days' notice by mail to the said executors, and to each person who is a legatee as aforesaid, of the time and place he will appraise the property in which the persons so notified shall be interested." The appraiser filed his report on the 23d day of December, 1887, and the same came regularly before me for confirmation. No objection was made by the comptroller, (to whom due notice of the motion to confirm was given,) and the report was confirmed by order entered June 12, 1888, which order is as follows: "On reading and filing the report of Thomas Harland, the appraiser herein, and after hearing Mr. Henry H. Anderson, of counsel for the executors of William H. Vanderbilt, in support of said report, and no one appearing in opposition thereto, it is ordered, first, that said report is, in all re-

spects, confirmed.   *   *   *"   The appraiser reported the names of persons to whom property had passed by the will, and also reported that such was all the property taxable under the act.   The confirmation of his report was such an adjudication of that question as to protect the executors, and they are not personally liable for the tax.   The state must look to the legatees.

I now consider the claims to exemption presented by these institutions separately.   By chapter 253, Laws 1870, the property of St. Luke's Hospital is declared to be exempt from taxation or assessment.   Under the authority of *Catlin* v. *Trustees*, 113 N. Y. 133, 20 N. E. Rep. 864, I find that the said St. Luke's Hospital is exempt from this tax.

The Protestant Episcopal Church Missionary Society for Seamen claims exemption under the general act exempting the real and personal property of every poorhouse, almshouse, and every house belonging to a company incorporated to improve the moral condition of seamen.   I find this claim good, and declare it exempt.

The New York Protestant Episcopal City Mission Society claims exemption as an almshouse.   It maintains a home and reading-rooms, etc., and provides lodgings and meals free.   It also maintains a day nursery, for which it makes a small charge.   This takes it out of the domain of pure charity,— a house wholly appropriated to the poor.   I have already decided in several cases that a society, to be exempt from this tax as an almshouse, must be absolutely free,—all benefits given gratuitously.   I must therefore hold the said society subject to the tax.

The Young Men's Christian Association has, by the court of appeals, (*Association* v. *Mayor, etc.*, 113 N. Y. 187, 21 N. E. Rep. 86,) been declared not to be entitled to exemption under any special act.   Only its real property on the corner of Twenty-Third street and Fourth avenue is exempt; and, as the court expressly held that portion known as the "Bowery Institute" not entitled to exemption from taxation, the claim of exemption in this case cannot be sustained.

The Domestic & Foreign Missionary Society of the Protestant Episcopal Church was a party in a suit similar to the case of *Catlin* v. *Trustees*, *supra*, and the court of appeals declared it subject to this tax.   *Catlin* v. *Society*, 113 N. Y. 625, 20 N. E. Rep. 867.

The Christian Home for Intemperate Men claims exemption under a special act, (Laws 1881, c. 546, as amended by Laws 1888, c. 523, § 7,) which exempts from local taxation or other purposes all the real and personal property of this corporation so long as it or its income is used for the purposes for which it was incorporated.   Judge ANDREWS, in *Catlin* v. *Trustees*, *supra*, says: "It has never been the general policy of the state to wholly exempt the property, either real or personal, of incorporated churches, colleges, or charitable institutions from taxation.   *   *   *   The policy of complete exemption, where adopted, has been accomplished through special acts applicable to particular and specified corporations."   The special act relied upon here simply exempts from local taxation or other purposes, those purposes being evidently local purposes, such as assessments, etc., and could never have been intended to extend to taxation by the state.   This institution also makes a charge for patients committed to its home, and that takes it out of the almshouse class.   It is liable.

The real estate owned by the Home for Incurables is declared to be exempt from all taxation by section 824 of the consolidation act, (subdivision 5, Laws 1882.)   That exemption does not include personal property.   Nor can this institution claim exemption as an almshouse, as it charges for the board of patients it receives.   It is liable.

The General Theological Seminary, New York Bible & Common Prayer Book Society, the Moravian Church of Staten Island, and the Board of Trustees of the Vanderbilt University of Nashville, Tenn., have submitted no

claim to exemption. Under the ruling in *Catlin* v. *Trustees, supra,* they are subject to the tax.

The Metropolitan Museum of Art and the American Museum of Natural History each claims exemption under the Revised Statutes (Banks' 8th Ed. vol. 2, p. 1083, subd. 7, § 4,) which exempts "the personal estate of every incorporated company not made liable to taxation on its capital in the fourth title of this chapter." Section 1 of that title reads as follows: "All moneyed or stock corporations deriving an income or profit from the capital or otherwise shall be liable to taxation on their capital in the manner hereinafter prescribed." These institutions plead no special act of exemption, but only the general provision. In *Catlin* v. *Trustees, supra,* Judge ANDREWS lays down the general rule on the question of exemption: "When, therefore, a corporation not exempted from taxation by its charter or some special enactment, but governed by the general law, claims exemption, it must be able to point to some provision in chapter 13, or to some amendment, which takes it out of the general rule declared by section 1, above quoted, or else its claim must be disallowed."

If, as was held in that case, the words "incorporated company" were intended to designate only business and stock companies, and if the definition of the Revised Statutes that "moneyed corporations" applies solely to banking or loan institutions and insurance companies, then these two institutions do not come under that head, and are not exempt. But should they come within the definition of the term "incorporated company," and are therefore moneyed or stock corporations, they would be equally subject; for section 1, tit. 4, c. 13, of the Revised Statutes, declares that all such corporations, deriving an income or profit from their capital or otherwise, shall be subject to taxation. These institutions derive an income from membership of various degrees and dues; from admission fees charged on certain days of each week; from the sale of books, specimens, etc.; and from the investments of property left them by will, etc. If this is not income or profit derived from capital, it is certainly profit or income derived otherwise, and therefore they are not exempt. These two institutions come clearly within the class subject to the tax, under the ruling in *Catlin* v. *Trustees, supra.* Submit order assessing and fixing the tax in accordance with this decision, notice of settlement of order to be given.