NEW YORK COUNTY.—HON. R. S. RANSOM, SURRO-
GATE.—March, June, 1888.

## MATTER OF ASTOR.

*In the matter of the estate of* CHARLOTTA A. ASTOR,
*deceased.*

The practice to be observed under the "collateral inheritance tax" law
(L. 1887, ch. 713, amending L. 1885, ch. 483), in the Surrogate's court
of New York county—announced.

As to whether the "estate which may be valued at a less sum than five
hundred dollars," declared not subject to tax by section 1, is that of
the decedent or of his successor—*quære.*

The Surrogate is deemed the superior authority upon all questions, includ-
ing that of value of the estate subject to the tax.

The order of the Surrogate, appointing an appraiser, will designate the
persons upon whom the latter shall forthwith serve notices by mail;
who will include all persons interested in the whole estate.

The Surrogate will not take any steps, upon his own motion, until the
expiration of eighteen months after the decedent's death.

In case of a will, under which the legacies subject to the tax are in cash,
the appointment of an appraiser is deemed unnecessary.

ASSESSMENT of tax, pursuant to L. 1885, ch., 483,
and L. 1887, ch. 713, upon estates passing under dece-
dent's will.

THE SURROGATE.—I have already written a memo-
randum in this proceeding announcing my decision
granting the application of the executors for the
appointment of an appraiser.   I have deemed it proper
to supplement that memorandum by some observations
upon the construction to be given the act, chapter
713, Laws of 1887, which I believe will be useful to

parties interested in estates subject to tax under the provisions of that act; and also the act, chapter 483, Laws of 1885, which in all the respects now under consideration is substantially, if not precisely, similar.

This legislation, in form and substance is justly entitled to severe condemnation for great looseness and incoherence of expression.  There is no symmetry in its provisions, and it is impossible to be certain of the intention of the lawmakers in respect of the various steps which it may be necessary to take to effectuate its purpose.  And if much is required by me to be done to put in motion the cumbersome and awkward machinery set up for the collection of taxes upon collateral inheritances, etc., which may seem to be unnecessary, the cause therefor must be looked for within the halls of legislation, where this anomalous statute was invented and sent forth to confuse, and therefore exasperate the personal representatives of deceased persons and the courts, by its glaring inconsistencies and absurdities.

After much patient reading and re-reading of this act, I have concluded upon a course of procedure which I hope and believe will bear the test of superior judicial investigation.  Fortunately, the constitutionality of the law cannot now be mooted.  The Court of Appeals has settled that (Matter of McPherson, 104 N. Y., 306).

The object of the act, as disclosed by its title, is " to tax gifts, legacies and collateral inheritances in certain cases."  Section 1 provides that " all property which shall pass. by will, or by the intestate laws of this State, from any person who may die seized or pos-

sessed of the same . . . . . other than to or for the use of his or her father, mother, husband, wife, child, brother, sister, the wife or widow of a son, or the husband of a daughter, or any child or children adopted as such in conformity with the laws of the State of New York . . . . . shall be and is subject to a tax of five dollars on every hundred dollars of the clear market value of such property . . . . . to be paid to the Comptroller of New York for the use of the State ; and all administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid . . . . . provided that an estate which may be valued at a less sum than five hundred dollars shall not be subject to such duty or tax.

It is not my purpose now to attempt to answer whether the expression " an estate " in the last sentence of this section means the whole estate of the deceased person or only so much thereof as passes to a person other than one of those exempted from the tax. This question may be presented some time, as for instance in case of a will bequeathing an entire estate worth over $500 to two or more persons, in amounts of less than that sum each. Nor shall I speculate upon the office and purpose of the word " duty," the last word but two in this section. It seems to be synonymous with the last word, " tax," but it may be that it was interpolated for the purpose of embellishment.

To my best understanding, section 2 provides that when any " grant, gift, legacy or succession, upon which a tax is imposed by § 1, shall be an estate, income or interest for a term of years or for life . . . . .

the entire property or fund by which such estate, income or interest is supported, or of which it is a part, shall be appraised immediately after the death of the decedent at what was the fair market value thereof at the time of the death of the decedent, in the manner hereinafter provided (see § 13), and the Surrogate shall thereupon assess and determine the value of the estate, income or interest subject to said tax, in the manner recorded in § 13 of this act."

By reference to § 13, for "recorded" provisions, we find that the value of the estate is to be ascertained by an appraiser, who shall be some "competent person appointed for that purpose, who shall appraise the same at its fair market value," and upon his report the Surrogate shall fix the then cash value of estates, annuities, life estates, etc.

Thus it seems by § 2, the Surrogate is to appraise in person, otherwise how can he "determine" the value of the estate. And by § 13, the appraisement is to be made by another officer, whose appraisement ought to be final, if made in good faith. Reading these two sections of the act together, I believe the value of all the estates subject to the tax must be ascertained by an appraiser, before whom all parties interested have the right to appear. This must be so, else why the provisions "recorded" in § 13, requiring the appraiser to forthwith give notice to "all persons known to have or claim an interest in such property of the time and place he will appraise such property." And the appraiser must also give such notice to such persons as the Surrogate may by order direct. Thus it may seem that the appraiser has another duty separate

and apart from the Surrogate, viz.: to exercise his own judgment as to what persons shall have notice and then look to the Surrogate's order for the names of any other persons discovered and designated by him.

I shall not commit myself to such a construction. The act, considered in its entirety, beyond reasonable doubt, I think, intends that the Surrogate shall be the superior authority upon all questions, including that of value of the estate subject to the tax; and means that he shall act judicially, although it is a new and strange duty imposed upon a judge that he shall become an appraiser of the value of all kinds of property which may be the subject of a gift or legacy, and an assessor of taxes to be levied thereon. Nevertheless, such seems to be the additional function bestowed upon the Surrogates of this State by this law, and they will no doubt faithfully strive to do their full duty in this new field of labor.

This section (2) further provides: "And the tax prescribed by this act shall be immediately due and payable to the treasurer of the proper county, and in the city of New York to the Comptroller thereof, and together with the interest thereon shall be and remain a lien on said property until the same is paid." And then in the next sentence of this same section it is declared in effect, almost in express words, that the tax shall not then become due and payable if the person or persons beneficially interested in the property chargeable with said tax may elect not to pay the same until the happening of an event which may never happen at all, to wit: until they shall come into the actual possession or enjoyment of such prop-

erty.  I am curious to know just how one can come into the " enjoyment" of a bit of property and not at the same moment come into its " possession."   The framer of this act has not given us any information on that point.

Section 4 also restates the point of time when " all taxes imposed by this act become due and payable, unless otherwise herein provided for, viz.: at the death of the decedent; and then we find in the very next sentence that if they are paid within eighteen months, no interest shall be charged and collected thereon; but if not so paid, interest at the rate of ten per cent., per annum, shall be charged and collected from the time said tax accrued, provided if it (the tax) is paid within six months from the accruing thereof, a discount of five per cent. shall be allowed and deducted from said tax; and further, that if the executors, administrators or trustees do not pay such tax within eighteen months from the death of the decedent, they shall be required to give a bond in the form and to the effect prescribed in § 2.

We have here in the same section certain conditions and limitations, all dependent upon the point of time when the tax accrues, and another condition and a positive requirement dependent upon the date of decedent's death.   It seems reasonably certain that the tax must be said to have " accrued" at the date of decedent's death, although it might be insisted with force of reason that it has not accrued until the appraisal has been made and the amount finally assessed by the Surrogate, after the numerous hearings upon the one question—that of value of property and liability

for the tax, have been given to all persons interested. It seems equally certain, however, that a tax cannot be said to be "due and payable" at a time when the party liable for its payment is not bound to pay it.

When we have applied the provisions of this act to real cases in the varied phases of the rights of persons, as they will no doubt be made to appear, we may unfathom its hidden mysteries, and that which now seems so dark and dubious may then become clear and open to our mental vision.   No doubt remains, I think, but that for the full period of 18 months from the date of decedent's death, the persons liable to pay the tax may be relieved from its payment, although by § 16 it is made the duty of the Surrogate's court (not the Surrogate) if it shall appear to that court "that any tax accruing under the act has not been paid according to law," to issue a citation, etc.   And, further, by § 17 we find that whenever the treasurer or comptroller of any county shall have reason to believe any tax is due and unpaid under this act (and we have seen twice provided that it shall be "due and payable" at decedent's death), he shall notify the district attorney in writing, and then that officer is required to sit in judgment on the case made out by the treasurer or comptroller to see whether he (the district attorney) has probable cause to believe a tax is due and unpaid. Mark the expression "a tax" instead of "the tax." This may be a side light to be regarded upon the question—to whom has been committed the final appraisal and assessment so far as the State is concerned ? But it seems to me that the decision of the Surrogate's court upon that subject is final upon the rights

of the State in the premises, except of course for fraud or refusal to act.

For present purposes we may now pass on to § 13 of this act (ch. 713) and briefly as may be possible for our attempt to a fair understanding of its provisions, consider how it shall be carried out. This section provides the mode of fixing the " value of property of persons whose estates shall be subject to the payment of said tax." I fancy that the phrase " whose estates shall be subject to the payment of said tax," means the estates of decedents; although we must admit that this is not literally true, for if anything can be said to be clearly expressed in this law, it is the fact that only certain parts (and portions) of such estates are subject to it. Nevertheless, I hold as above stated. But for execution of the law we should read this section as if the words of this phrase were not there.

I hold, therefore, that the Surrogate acting judicially as a court must, upon the application of an " interested party," who may be any person having an interest in the whole estate, who is now designated by law, and also the county treasurer, and in New York the comptroller, represented by the district attorney, and on failure of any such person to apply upon his own motion (no time is named when he shall move himself) appoint some competent person as appraiser from time to time if occasion requires, whose duty it shall be to forthwith give notice by mail to all persons known to have or claim an interest in such property, and to such persons as the Surrogate may by order

direct, of the time and place he will appraise such property.

Under any construction of this section and procedure spelled out, I fail to perceive that there would ever be more than one occasion to appoint an appraiser. I hold also that the order of the Surrogate appointing the appraiser should designate the persons upon whom the appraiser shall forthwith serve notices by mail; and these persons, for the sake of certainty and finality of proceeding, should be all who are now by law interested in the whole estate and by law entitled to notice of all proceedings affecting the same. This section does not provide for the length of notice. I hold, therefore, that it is the duty of the Surrogate to fix it; and the facts in each case must be his guide in that regard.

All parties notified by the appraiser have the right to attend before him and to be heard upon the question of value of the property and its or their liability to the tax. The appraiser must report to the Surrogate the fair market value of the property he deems subject to the tax, together with his proceedings and any and all facts known to him germain to the duties imposed upon him by the order of his appointment. He has not, however, any right under this act to administer oaths and take testimony upon any of the questions to be considered by him. This seems a most regretful lack of power, which should have been conferred upon him for obvious reasons.

On the coming in of the appraiser's report, the Surrogate, it is provided, shall forthwith assess and fix the then cash value of all estates. Whether there might

not be a real difference between the "fair market value" and the "cash value" of all estates, and hence more confusion, I do not stop to discuss. I hold that the two expressions mean the same thing in this act.

The section provides that the Surrogate shall first assess, etc., and then mail notices, etc. I hold that just the reverse of this shall be our practice.

On the coming in and filing in the Surrogate's court of the appraiser's report, the Surrogate shall give notice thereof by mail to the same parties immediately. He must act "immediately"—the appraiser "forthwith" in respect of the same thing precisely. I feel compelled, however, to determine that the lawmakers intended these to be convertible terms, and that the requirement in this regard will be met by such prompt notice as the Surrogate shall deem reasonable under the facts of each proceeding.

The notice of the Surrogate must fix the day and hour when he will hear any of said parties in regard to the subject-matter which had been committed to the appraiser by the order for his appointment; and thereafter the Surrogate must forthwith assess and fix the true cash value of all estates.

The last paragraph of this section pretty plainly points out the grounds and mode of appeal from this assessment by the Surrogate. But it is remarkable that the appeal is from the Surrogate to the Surrogate. One advantage has been gained, however, by the State, which in these devious ways has been seeking this tax—persons dissatisfied must give security for whatever tax shall be fixed by the court, and their time to appeal is limited to sixty days.

Section 16 of this act makes it the duty of the Surrogate's court to issue a citation citing the persons interested in the property liable to the tax to appear before the court on a day certain to show cause why the said tax should not be paid.

Section 17, which might well have preceded § 16, I think, makes it the duty of the county treasurer or comptroller, whenever he shall have reason to believe that any tax is due and unpaid under the act, after the refusal or neglect of the persons interested in the property liable to the tax to pay the same, to notify the district attorney in writing.

Section 18 provides that " the Surrogate and county clerk of each county shall every three months make a statement in writing to the county treasurer or comptroller of his county of the property from which, or the party from which (sic) he has reason to believe a tax under this act is due and unpaid. "

Reading these three sections (16, 17 and 18) as one, and having due regard to the other provisions of the act, I hold that the Surrogate should not take any steps upon his own motion until the expiration of eighteen months after the date of the decedent's death.  At that point of time he should ascertain from the proceedings generally in his court relating to the estate, from the will, if there be one, and from any source open to him, whether " any tax accruing under this act has not been paid according to law," and if it shall appear to him that it has not been paid, to issue the citation and take the proceedings provided for in section 16.   I am of opinion also that, until the expiration of eighteen months after decedent's death, the

comptroller and district attorney ought not to initiate any proceeding except on the former's application, as I have already shown, for the appointment · of an appraiser : because the intent of the act is undoubtedly to relieve the estate and persons interested therein, and the administrators, executors or trustees, at their option, from the payment of the tax during eighteen months next succeeding the date of decedent's death.

I hold that in the case of a will, under the provisions of which the legacies subject to this tax are in cash, the appointment of an appraiser is unnecessary. The Surrogate on application, or on his own motion, shall appraise the value of this species of property and assess the tax by order, and thereupon give notice to all persons, as hereinbefore shown.

Section 20 seems to exclude from record in the book to be kept by the Surrogate cash subject to the tax.   This is not true of the real intent of the section read in the light of the other provisions of the act. This book must contain all that is specifically mentioned in this section and also the property in cash subject to the tax and the tax assessed thereon.

———

APPLICATION to confirm appraiser's report, June 13th, 1888:

THE SURROGATE.—I have heretofore expressed my views of the construction to be given to the Collateral Inheritance tax act in respect to the various steps to be taken in ascertaining the property liable to the

tax and the appraisal of the same (7 *Surr. dec., p.* 161, estate of Astor). I have not had reason to change or modify that decision, nor has it been questioned or adversely criticised by any appellate tribunal.

Under that decision we have proceeded with considerable confidence in the correctness of our practice. Appraisers have been appointed upon the assumption that the orders of their appointment were in exact compliance with it. In the main, these orders were no doubt exact, but as the cases have not been contested my attention has not been specially attracted to the form of each order, nor to the appraiser's reports made in pursuance thereof.

As the present proceeding is the one in which I first considered (with some care) the act, my interest in the report of the apprasier, under the order for his appointment herein, has kept me mindful of my determination to carefully review it when presented for confirmation; and although the report was submitted after notice by me to all persons interested, without objection, and might in the ordinary course of business have been confirmed without special examination, relying, as I should have been justified in doing, upon the comptroller for any valid objections thereto, I have given it careful examination, and, without meaning to overrule any conclusions reached by the appraiser, I must decline to confirm his report in its present form.

I do not intend to express any opinion upon the question of exemption of the legacies from the tax; that question is not properly before me under this report, nor could it be in any case, except on ob-

jection by a legatee whose interest in the estate had been held liable to the tax by the appraiser.

The appraiser should report any property, estate or interest therein " subject to the tax." This duty is plainly devolved upon him by § 13 of the act in these words, viz.: " In order to fix the value of the property . . . subject to the payment of said tax, the Surrogate . . . shall appoint some appropriate person appraiser," etc. The appraiser is not appointed to fix the value of property which is not subject to the payment of the tax. In the case under consideration, he has devoted much of his time and labor to the question of what property is exempt therefrom. It is true that in order to ascertain what property is subject to the tax and its fair market value, he necessarily ascertains that certain other property is not subject to it—that is, exempt. But his duty, as I conceive it to be, is not to report such exemptions. If, in the view of any person interested, the appraiser has not reported all property subject to the tax, such person could and should raise the question on the coming in of his report; and if in the right, the report should be sent back with instructions to appraise the fair market value of such property.

In this proceeding the appraiser was justified by the order of his appointment in reporting certain legacies as exempt from the tax. That provision of the order escaped my observation when it was signed.

Such provision was improper; but as the order was in all essential particulars right it may be disregarded. The appraiser's report, when confirmed, is in the nature of a decree imposing a tax upon certain de-

scribed property; and, so far as the State of New York is concerned, at least, must be final in respect of any future claim for this tax upon all property then in existence and known to the appraiser, always, of course, assuming that he acted in good faith and without concealment or fraud on the part of the persons interested in such property.

If the appraiser should be in doubt as to the liability of any property to the tax he should report it subject thereto, and in that case any person dissatisfied has ample protection, provided for by § 13 of the act by appeal to the Surrogate in the event that the appraiser is sustained on the coming in of his report, by giving security for the tax, and further protection by appeal from the decree of the Surrogate by the usual steps to the court of last resort.

So far as the State is concerned the legislature intended, I think, that the Surrogate, aided by the appraiser, shall be the ultimate power. Therefore, exemptions from the tax should not be adjudged except upon the facts to be ascertained by the Surrogate according to usual methods in a court of justice. The appraiser has no right to take testimony under oath and, except in the plainest case, he ought to hold all property passing by the will of a resident, or by the intestate laws of this State subject to the tax. It is easy to imagine a case where the claim of a person interested that his property is not subject to the tax can only be disposed of, in justice to him and to the State, by the examination of witnesses, by the laying in evidence of documents, etc. In such a case I am of opinion that the Surrogate has the power

under the act, and if so, then such would be his duty, to require legal proof of all the facts pro and con.

In the present case the appraiser has found certain legacies exempt from the tax, and no doubt he has so found upon evidence which to his mind is satisfactory and conclusive; but he has not reported those facts to me, nor indeed could he do so under this law in such form as to be obligatory upon me or in the least satisfactory, because he has no right to examine witnesses under oath. In this case the appraiser refers to briefs of counsel to sustain his findings. I need not, I am sure, spend any time in showing the impropriety of such reference. The great eminence of counsel and the supreme confidence of the appraiser and of myself in their learning does not authorize me to pass a decree depending upon their briefs to sustain its recitals. The appraiser should have relied upon facts and stated them, and upon adjudicated cases and text books and cited them.

However, this does not so much matter, because I hold that his report must be amended by striking out all that portion of it which exempts legacies named, and should mention only such property as he finds subject to the tax, and all of such property, and to so expressly report. As I have attempted to show on the confirmation by the Surrogate of his report, proceedings to collect this tax on property then in existence are at an end, and all property not then held subject to the tax may be distributed free of any further claim by the State. In some other respects the report of the appraiser should be amended, and to

save all question of his authority, an order reappointing him should be handed up.

*First.* The appraiser reports that he has appraised the property both real and personal, of the deceased " made known to him by the executor of the will." This is erroneous.   The appraiser should appraise the property subject to the payment of the said tax, and the source of his information need not necessarily be stated ; at all events, he should unequivocally report that he has appraised *all* property subject to the payment of the tax.

It may be that an executor by inadvertence, forgetfulness or fraud may fail to disclose all property of the deceased subject to the tax.   The appraiser is not precluded by such information, nor has he properly performed his duty if he seeks for no property beyond that which is disclosed by the executor ; and his report should be that he has appraised all property subject to the tax, giving the name of the owner or person having an interest therein and if, in his judgment, his means of ascertaining the extent of such property may be pertinent and material for the information of the Surrogate, he should state them.   He cannot assume, however, that information from the executor—or from any other person, for that matter—is conclusive.

The appraiser in this case has also stopped a little short of his duty under the act in respect of notices by mail to persons known to have or claim an interest in such property.   He reports that he has given notice by mail, postage prepaid, of the time and place of said appraisal to each of the persons to whom the Surrogate did by said order direct.   It may be that these persons

are all who have any claim or interest in such property, but the appraiser has an independent duty to perform under my construction of the act, heretofore given in this matter.

I deem it the duty of the Surrogate to ascertain the names of persons known to have or claim an interest in such property at the time of appointing the appraiser, and that such names shall be given in the order, and to them the appraiser must give notice. He is not, however, relieved by such order from inquiry for any other person or persons known to have or claim an interest in such property, and he should not only report service upon persons named by the Surrogate, but the additional fact that they are, or are not, all the persons known to him, the appraiser, to have or claim an interest in such property.

The appraiser reports: " I have appraised the property of said Charlotte Augusta Astor, deceased, as follows." This is not in accordance with the requirements of the act. It provides that he shall appraise such property at " its fair market value." He has omitted to state that he has thus appraised it.

The petition for the appointment of appraisers in testate cases may be as follows :

" Title.

" To ———, Surrogate.

" The petition of ——— respectfully shows :

" First—Your petitioner is ———, and as such is a person interested in the estate of the above-named decedent.

" Second—That the said decedent departed this life

on the —— day of ——, in ——, and that he was a resident of this State.

" Third—That said decedent left a last will and testament, which was on the —— day of —— duly admitted to probate, and that —— are the executors of said will, and that their post-office addresses are : ——

" Fourth—That, as your petitioner is informed and believes, the property of said decedent, passing by said will, or some portion thereof, or some interest therein, is subject to the payment of the tax imposed by the law to tax gifts, legacies and collateral inheritances in certain cases.

" Fifth—That all the persons who are interested in said estate, and who are entitled to notice of all proceedings herein, including the Comptroller of the city of New York, and their post-office addresses are as follows, viz. : ——

" Wherefore, your petitioner prays that you will appoint some competent person as appraiser, as provided by law.

" And your petitioner will ever pray.

" (Verification.) ——, petitioner."

This form may be varied to suit intestate cases.

The order appointing the appraiser may be in the following form :

Caption.

Estate of ——. .

" On reading and filing the petition of ——, praying for the appointment of some competent person as appraiser under and in pursuance of the law to tax

gifts, legacies and collateral inheritances in certain cases, it is ordered that ———, Esq., be and he hereby is appointed such appraiser.

" It is further ordered that said appraiser shall give the notice required by said law in the manner and at the time therein set forth (and said notice shall be ——— days), to the following persons and to all other persons known to have or claim an interest in the property of ———, the decedent in the above entitled proceeding, subject to the payment of said tax, viz. : (Here take in names of persons to be served with notices.)

The form of the appraiser's report may be as follows: Title of proceedings.

To ———, Surrogate : " I, the undersigned, who was on the ——— day of ——— appointed appraiser under and in pursuance of the law to tax gifts, legacies and collateral inheritances in certain cases, a certified copy of which order is hereto attached, respectfully report :

" First—That forthwith after my said appointment, I gave notice by mail, postage prepaid, to all persons known to have or claim an interest in all property subject to the tax imposed by said law, and to the following named persons, being those named by the Surrogate in the said order, of the time and place I would appraise the property of ———, deceased, subject to the payment of said tax ; a true copy of said notice is also hereto attached.   (Here take in names.)

" Second—I further report that at the time and place in said notice stated, to wit : on the ——— day

of———— at ———— I appraised all the property of said ———— deceased, subject to the payment of said tax, at its fair market value, as follows, to wit: (Give minute description of the property appraised, name of owner or person interested therein and his post-office address, and the fair market value of such property.) All of which is respectfully submitted.

"————— ——————, appraiser."

The appraiser before entering upon his duties should take the oath of office required by general law to the effect that he will faithfully and fairly perform the duties of such appraiser and make a just and true report according to the best of his understanding. This oath of office should also be attached to his report.

The Surrogate, on the coming in of the appraiser's report, should, if he confirms it, make an order to that effect, and he must forthwith assess and fix the then cash value of said property, subject to the payment of said tax. His order may be in the following form:

Caption.

Title of proceeding.

"On reading and filing the report of ————, the appraiser herein, and after hearing———— in support of said report and ———— in opposition thereto, ordered:

"First—The said report is in all respects confirmed.

"Second—The cash value at this date of the property mentioned and described in said report, which is subject to the payment of the tax imposed by law taxing gifts, legacies and collateral inheritances is as follows: ————.

"Third—That the tax to which the said property is liable is as follows, viz.: ————.

"———— ———— Surrogate."