## *In re* WOLFE'S ESTATE.

*(Surrogate's Court, New York County.   July 3, 1891.)*

1. LEGACY TAX—APPRAISEMENT—NOTICE TO COMPTROLLER.

    In proceedings to appraise the estate of a decedent under Laws N. Y. 1887, c. 713, entitled "An act to tax gifts, legacies," etc., the comptroller has such a claim or interest in the property as entitles him to notice of the proceedings to appraise the estate, under section 13, and failure to give such notice to the comptroller avoids the appraisement, as against the state.

2. SAME—ACCEPTANCE OF TAX—ESTOPPEL.

    Acceptance by the comptroller of the tax on some of the legacies appraised in such proceedings does not estop the state to require an appraisement of and to impose the tax on legacies which were improperly assessed, or which were not assessed at all, and on which no tax has been paid.

3. SAME—ENFORCEMENT—PROCEEDING IN REM.

    The tax imposed by Laws N. Y. 1887, c. 713, on legacies in certain cases, is a tax on the legatee for the privilege of receiving the legacy, and is not a tax on the property itself, and therefore a proceeding to enforce it is not *in rem.*

4. SAME—EXEMPTIONS—GRACE CHURCH.

    Grace Church, a religious corporation in New York city, organized under Laws N. Y. 1801, c. 79, and amending acts, is not a corporation whose benefits and privileges are free to all, and it is therefore not a free public charity, such as is exempt from taxation under Laws N. Y. 1887, c. 713, relating to the taxation of legacies and collateral inheritances in certain cases.  Following *In re Vanderbilt's Estate,* 10 N. Y. Supp. 241; *Catlin* v. *Trustees,* 113 N. Y. 133, 20 N. E. Rep. 864.

5. SAME—METROPOLITAN MUSEUM OF ART.

    Nor is the Metropolitan Museum of Art, incorporated under Laws N. Y. 1870, c. 197, which derives an income from membership, sales of books, etc., and which gives certain privileges to its members on certain occasions to the exclusion of the general public, a free public charity, so as to exempt from such tax.  Following *In re Vanderbilt's Estate,* 10 N. Y. Supp. 241; *Catlin* v. *Trustees,* 113 N. Y. 133, 20 N. E. Rep. 864.

6. SAME—RETROACTIVE STATUTE.

    Laws N. Y. 1890, c. 553, which exempts religious, educational, benevolent, etc., corporations from the legacy tax, (Laws N. Y. 1887, c. 713,) is not retroactive, so as to exempt from the tax a legacy which was subject thereto at the time of testator's death.  Following *Sherrill* v. *Christ Church,* 121 N. Y. 701, 25 N. E. Rep. 50.

7. SAME—LIMITATION—ACTION FOR PENALTY.

    An action to compel payment of the legacy tax, brought under Laws N. Y. 1887, c. 713, is not an action for a penalty, under Code Civil Proc. N. Y. § 384, which must be brought within two years after the cause of action accrued.  Following *In re Vanderbilt's Estate,* 10 N. Y. Supp. 241.

8. SAME—PERSONAL—LIABILITY OF EXECUTORS.

    Where executors pay a legacy in good faith, and in reliance on a decree of the surrogate that such legacy is not subject to the legacy tax, (Laws N. Y. 1887, c. 713,) which decree is not binding on the state because the comptroller was not made a party to the appraisement proceeding in which it was rendered, the executors will not be held personally liable for the amount of such tax on a subsequent adjudication that the legacy is subject thereto.

Proceeding by the district attorney of the county of New York under Laws N. Y. 1887, c. 713, to compel legatees under will of Catharine L. Wolfe, deceased, to pay the collateral inheritance tax, and to impose a personal liability therefor, under the statute, upon the executors of testatrix's will.   The matter was sent to James W. Perry, Esq., referee, for his determination, and, after hearing counsel, he rendered the following opinion:

"This is a proceeding instituted by the district attorney of the county of New York on his petition, claiming to represent the people of the state of New York, to compel the payment of the tax claimed to be due, unpaid, and imposed upon certain legacies made in the will and codicil of said Catharine L. Wolfe, deceased, under the provisions of chapter 483 of the Laws of this state, passed June 10, 1885, entitled 'An act to tax gifts, legacies, and collateral inheritances in certain cases,' and chapter 713 of the Laws of 1887, amending the same; the authority in law for this proceeding being especially under section 17 of said act.   It was brought by such district attorney, after having received notice from the comptroller of the city of New York that he

had reason to believe that the tax in question was due and unpaid, and that the persons interested in such legacies had refused and neglected to pay the tax lawfully imposed and accruing thereon. The particular legacies or gifts upon which the petitioner claims a tax is now due and unpaid, by force of the provisions of said act, are given by the sixth clause or paragraph of the last will and testament, and the codicil thereto, of said decedent. The said Catharine Lorillard Wolfe died in the city of New York on or about the 4th day of April, 1887, leaving a last will and testament, and the codicil thereto, which was duly admitted to probate by the surrogate of New York county. Letters testamentary were issued to David Wolfe Bruce, David Wolfe Bishop, and Louis L. Lorillard, who qualified as executors of her said will. They, together with the legatees in question, are the respondents in these proceedings. By the sixth clause or subdivision of her said will, said decedent gave to the Metropolitan Museum of Art, a corporation chartered under chapter 197 of the Laws of 1870 of the state of New York, 'my entire collection of modern oil paintings, with their frames, and also my water-color drawings, with their frames, which paintings include the original portrait of my late father, John David Wolfe, by Huntington, and my own portrait, by Alexander Cabanel,' to be delivered under certain conditions, by her executors, to said Metropolitan Museum of Art within six months after her decease. This collection of paintings was to be known as the 'Catharine Wolfe Collection.' And, in order to provide for the better preservation of said paintings and drawings, and the future increase of said collection, the said decedent, by the same clause of her will, gave to her executors the sum of $200,000 in money, (or in stocks and securities deemed by them to be of that value,) upon the trust to hold and invest the same in securities of the United States or bonds in good credit, and to apply the net amount of said income to the use of the said Metropolitan Museum of Art during the lives of two of her said executors, in such judicious repairs of such works of art as may be necessary, and any surplus to be expended in the purchase of other original, modern oil paintings, etc. And if the said Metropolitan Museum of Art should acquire the legal right to hold such fund in perpetuity upon the trust and for the purposes in said bequest expressed, then, in such event, it was made the duty of her said executors to pay over such fund to said institution on the same trusts, to be held in perpetuity for the purposes aforesaid; but, in the event that said institution shall not acquire power and authority under the laws to hold such fund on such trusts, then, upon the death of the survivor of said two last-named executors, said principal fund shall belong to and be paid or delivered to said institution, to be applied by it as fully as may be to the purposes in said will expressed. By the codicil to her said will, dated March 24, 1885, said decedent revoked and annulled the entire sixteenth section of her said will, and in lieu of the bequest therein gave and bequeathed the sum of $350,000 to the Rector, Wardens, and Vestrymen of Grace Church, in the city of New York, in their corporate capacity, upon the trusts therein named, generally being to keep the same safely invested, and to receive and apply the income thereof to the maintenance, improvement, and decoration of the present Grace Church edifice, in the city of New York, and the two adjoining buildings erected by decedent in memory of her father, and known as 'Grace Church Chantry,' and 'Grace House,' 'and especially to promote, continue, and perpetuate the observance of religious worship and instruction, according to the rites, in their purity, of the Protestant Episcopal Church of America, at or in said buildings, or any that may be erected there in the place thereof,' etc.

"These, then, are the two legacies or gifts upon which the petitioner claims a tax is imposed under said act, and which is due and unpaid, which may be summarized as: (1) A gift or legacy to the Metropolitan Museum of Art, in New York city, of the decedent's entire collection of oil paintings and water-color

drawings, upwards of an hundred in number, together with a fund of $200,000, to keep the same in repair, and for the purchase of works of merit of modern artists, in addition thereto. (2) A gift or legacy of $350,000 to the Rector, Wardens, and Vestrymen of Grace Church, in the city of New York, for the church purposes of such religious corporation.

"The petitioner, as representing the people of the state of New York, claims that neither the state, the comptroller, nor district attorney ever received notice of any appraisement of such legacies; that it was entitled to such notice; that the tax upon said gifts or legacies lawfully imposed by the said statute has never been paid and is now due. The petitioner seeks by these proceedings to assess and collect the same. The executors and the Metropolitan Museum of Art and Grace Church, the legatees in question, claim that due proceedings were had for the assessment of the tax upon such legacies under such statute; that the same were declared by the surrogate to be exempt from taxation under the order or assessment duly made on October 29, 1887; that no appeal was ever taken by the comptroller or state from such order or decree; and that the state is now estopped by said order, and cannot maintain these proceedings. In addition, the executors claim that they paid and delivered these two separate legacies, not until after they had been adjudged exempt by the decree or order of Surrogate ROLLINS of October 29, 1887; that they did so in good faith, and, whether such legacies are now taxable or exempt, they are not personally liable. In this situation of affairs, the surrogate before whom these proceedings were inaugurated has referred this matter to me to take the evidence produced by the respective parties hereto, upon the issues formed by the petition, answers, and reply herein. I have taken all the testimony, and received as well all of the records in this proceeding, offered by any party, that seemed in any respect, however remote, to bear upon the questions here involved. The facts upon which this proceeding is based are not really or in any substantial sense disputed. The questions at issue are those of law upon facts, which, for the purpose of this discussion, may be deemed admitted. These questions are, however, interesting and novel, and practically are upon the construction of the statute referred to, which, in certain of its provisions, at least indefinite and uncertain.

"The facts, in addition to those already stated, are that on June 2, 1887, the executors of said decedent, by petition, applied to the surrogate of the county of New York for the appointment of an appraiser, in order that an appraisement might be made, and the amount of the tax, under the provisions of said collateral inheritance tax act, be ascertained and declared. On the same day the surrogate, without notice, appointed one James M. Jackson such appraiser. On June 23d a supplemental petition of said executor was filed, stating that the above order appointing the appraiser did not prescribe notice to be given of such appraisement to the parties interested, and praying that an order be made fixing a reasonable time for notice to be given by the said appraiser to all parties interested in the real and personal property of said decedent. On June 24, 1887, an order of the surrogate was entered on such petition, providing for notice to certain legatees of an appraisement of said decedent's estate not already appraised. This order, however, as did the previous order, provided for no notice to the comptroller. Thereupon the said named appraiser, without having given any notice of such appraisement to the comptroller or to any person or official representing the state, proceeded to appraise the estate in question. On August 10th the appraiser filed his report. Nowhere in the report, nor in his affidavit attached, does it appear that he mailed notice of such appraisement to the comptroller of the city of New York. Nor, as a matter of fact, was he so notified, nor did he know of such appraisement. On August 27, 1887, an order was made by the surrogate confirming the report of said appraiser, without notice to the comptroller or other official, nor was he heard or notified of the application for such order. This

order, however, contained the following clause: 'And all questions as to the liability to taxation, and the value for that purpose of property not herein assessed, including the estimated deduction from the residuary estate for compensation to the executors for making divisions or otherwise disposing of the real estate, as to which certain powers are conferred upon them, are hereby reserved for further consideration upon the 15th day of September, 1887, at 11 o'clock in the forenoon, at the surrogate's court, in the court-house in the city of New York, which time and place are hereby assigned for a hearing upon the following questions, viz.: Why the property disposed of in the 5, 6, 12, 17, and 18 clauses of the will of said Catharine Lorillard Wolfe, and in the codicil to said will, should not be valued and assessed for taxation under such act,' etc.

"It will be noticed that the question as to whether particular legacies or gifts sought to be taxed under these proceedings were lawfully liable to be taxed are specially reserved for a hearing before the surrogate at the time designated in said order.    On the 3d day of September, 1887, the executors, through their attorneys, caused a copy of such order to be mailed to the comptroller, together with a copy of the appraiser's report, and a notice that the questions reserved would be heard at the time designated in such order.    Up to this time the comptroller had been wholly ignored in the entire proceedings, and, indeed, it would seem to have been the purpose of the executors to give no notice whatever to the comptroller or other official representing the state, since it was only upon the suggestion of the surrogate that the comptroller was inserted in the notice as a party after the appraisement had been completed and confirmed.    This was the first notice received or given the comptroller of any proceedings in this estate to assess the tax upon the various legacies and gifts made in the will of decedent, under the provisions of said act.    On the 6th day of September, one of the assistants to the surrogate served upon the comptroller a certified copy of the order last mentioned.    This is the first notice that the comptroller appears to have actually received of the proceedings to tax the legacies herein, although, for the purpose of this discussion, he may be deemed to have received the notice mailed to him on the 3d inst. by said executors.    At the hearing specified in said order, on September 15, 1887, the comptroller did not appear, and was not heard; nor did the district attorney appear on such hearing, nor was he ever notified of any proceedings in this estate, until he was informed that the tax herein had not been paid, upon which he instituted these proceedings. On the 29th day of October, 1887, the surrogate made an order herein exempting the legacies given to the Metropolitan Museum of Art, and to the Rector, Wardens, and Vestrymen of Grace Church, from taxation under said act.  It does not appear that this order of October 29, 1887, was ever served upon the comptroller, or that he received notice of its entry.  As a matter of fact, the legacies to Grace Church of a bust of Bishop Potter, contained in the fifth section of said will, and of a pew in Grace Church and St. Paul's Church, contained in the eighteenth section of said will, given to said church corporations, and the legacy of the collection of oil paintings, water colors, etc., upwards of 100 in number, given to the Metropolitan Museum of Art, under the sixth section of said will, (the latter being one of those in question,) were never appraised by the said appraiser, and their fair market value never ascertained; and they are nowhere mentioned in the appraiser's report. These are all the facts that are material to this discussion.    I have been thus full and explicit, so that the entire facts that in any manner influence or control the determination of the question under consideration might be fully stated.

"The first question that presents itself for consideration is, is the comptroller entitled to notice of appraisement, as an interested party, and is he entitled to a hearing before the appraiser as to the value of the property sought to be assessed?    The comptroller is the collecting officer representing

the state, on the appraisement of the property, the assessment and collection of such tax, at least in voluntary proceedings instituted by the executors. As the rate of the tax only is fixed by law, the amount of such tax is necessarily determined by the value placed upon the property by the appraiser. Necessarily, therefore, it would seem that the comptroller, representing the state, was an interested party upon the appraisal, where the sole question to be determined is, what is the fair market value of the legacies claimed to be liable for such tax? and that he is a necessary party to the validity of such proceedings. It was plainly the duty of the appraiser to mail a notice of appraisal of these legacies to the comptroller, upon which appraisal he had the right to be heard. He was not so notified. Nor did he know of such appraisal until after the same had been made and completed, and the appraiser's report confirmed in all respects, excepting as to the questions reserved. I do not understand that it is any part of the duty of an appraiser under this act to declare whether any legacy is exempt or not, his duty being simply, after giving the notice required by law, to ascertain the fair market value of the legacy, and report the same in writing to the surrogate, who thereupon assesses the tax thereon. In this case, however, the appraiser in his report did declare the legacies in question exempt from taxation. *In re Astor,* 2 N. Y. Supp. 630; *In re Vanderbilt's Estate,* 10 N. Y. Supp. 239. However that may be, since the comptroller here was given no notice of the appraisal of the estate of decedent, I have no difficulty in reaching the determination, on the authority of the following cases, that the comptroller was not bound by such appraisal, and that the proceedings thereunder were without jurisdiction, and void as to the state. As far as the rights of the petitioner representing the people are concerned, it is the same as if such appraisal was never had. This clearly seems to be the conclusion in the following case, where the constitutionality of the various provisions of the act were under discussion, and EARL, J., writing the opinion of the court, referring to this section of the act, says: 'Therefore, when the section provides that he shall designate by order to whom the notice is to be given, it is necessarily implied that he shall designate all persons entitled to notice. If he should omit to do so, it would be an error on account of which any tax imposed upon the person not notified or heard would be invalid, as having been imposed without jurisdiction.' *In re McPherson,* 104 N. Y. 322, 10 N. E. Rep. 685. So, also, in *Re Vanderbilt's Estate,* 10 N. Y. Supp. 239, which in many respects was a proceeding similar in its circumstances to this. The surrogate, in citing the foregoing case, said: 'No notice of appraisement was ever given to the comptroller or district attorney, or to the institutions now sought to be subjected to the tax. It is clear that each were entitled to such notice.' The comptroller, then, being a party in interest, therefore a necessary party, and not having been notified nor heard on the appraisal, as provided by section 13 of the act,[1] it inevitably follows that the appraisal was invalid and without jurisdiction as to the state, of which he was the collecting agent in such voluntary proceedings. But it is urged by the executors and legatees that, even if the comptroller did not receive notice of, and did not have a hearing upon, the appraisal, he did have notice of a hearing upon the questions reserved by the surrogate for his determination, which included the questions of liability to taxation of the legacies here under consideration; that such notice was contained in the order of the surrogate of August 27, 1887, confirming the report of the appraiser, except as to certain legacies, including these, and which designated September 15, 1885, as the time when the hearing would be had upon such reserved questions; that this order containing such notice was served upon the comptroller on the 3d and

[1] Section 13 provides that, "in order to fix the value of property of persons whose estates shall be subject to the payment of said tax, the surrogate * * * shall appoint some competent person as appraiser, * * * whose duty it shall be forthwith to give such notice by mail to all persons known to have or claim an interest in such property."

6th of September, 1887; that he had an opportunity then to be heard upon these questions, and, if he did not choose to avail himself of it, he had his day in court, if he desired it, and is now estopped from questioning such proceedings, and therefore bound by the order of the surrogate of October 29, 1885, exempting these legacies from taxation upon such hearing. This contention of the executors and legatees seems to ignore the certain right of the state to be heard upon the question of the fair market value of the legacies. That question had already been determined without notice. The surrogate has no authority, under the statute, to fix the market value of the legacy. He is the assessing officer, and upon the report of the appraiser assesses the tax, and determines whether the legacy is exempt, or liable for the payment of the tax. I am not unmindful here that it may be said that the legacy to Grace Church and part of that to the Metropolitan Museum of Art (if it can be separated) are each money legacies, and so, perhaps, needed no appraisal as to the market value. An examination of section 13 of the statute plainly shows that the appointment of the appraiser and his appraisal are the initial steps in the proceedings to ascertain the liability of estates to taxation, and not until such proceedings are had does the matter come before the surrogate for his assessment. That was done in this case. If, then, the initial proceedings were invalid and without jurisdiction, it is difficult to see how any subsequent proceedings, based upon the invalid and void proceeding, can become valid and binding upon any person as to whom the prior proceedings were without jurisdiction. If the appraisal was invalid as to the comptroller as the receiving or collecting agent of the state, certainly no assessment based upon the appraisal can be binding or conclusive on him. It can only conclude those whom the appraisal concludes; that is, those parties in interest who had due notice of the appraisal. I do not think that the surrogate has any jurisdiction to make an assessment upon an invalid and void report of an appraiser; and, if such an assessment is made, it also is invalid and void. In other words, if the proceedings are without jurisdiction from the beginning, all subsequent proceedings are equally so, unless the want of jurisdiction is waived. No waiver has even been made by the state here.

"Another ground of estoppel made against the petitioner by the respondents is that the comptroller accepted payment of taxes upon certain gifts or legacies other than those in question assessed by the order of August 27th. I do not see that this affects the position of the petitioner at all. The legacies were separate and distinct from those here, and taken by different legatees, and, as the comptroller ascertained the correctness of the assessment made, he might well accept the payment of the tax properly assessed thereon, without destroying his rights, or imperiling those of the state, to collect other taxes or other legacies, to impose a tax upon which no due proceedings in law had yet been had. But not even these grounds of objection, with which I do not agree, and against which I decide, can be made against the legacy of oil paintings, water colors, their frames, etc., upwards of a hundred in number, given to the Metropolitan Museum of Art. This collection of paintings and water colors, their frames, etc., have never been appraised at all. Its fair market value has never been ascertained nor reported to the surrogate, nor has he made any assessment thereof upon any report. Certainly, as to this collection of paintings and water-color drawings, and their frames, an appraisement must be had, and an assessment made thereon. Upon this branch of the question, therefore, I conclude that the previous proceedings for the purpose of assessing the tax under said act were without jurisdiction as to the comptroller, and does not estop or conclude him or the state in these proceedings. The rights of the state to collect the tax on such legacies, under such act, are unaffected by such prior proceedings.

"I have carefully considered another reason why the state is not estopped by the prior proceeding, which has been presented to me with much force and

ability by the counsel representing the state; that is, that the plea of former adjudication cannot avail here, because neither the parties to the proceeding nor the subject-matter, remedy, or cause of action is the same, and that, for such plea to prevail, the two proceedings must be identical in all these particulars. In other words, that the former proceeding, under section 13, was purely an assessment proceeding, in which no liability could be enforced; that the present proceeding is one instituted under sections 16 and 17, by the district attorney representing the state, to impose the liability and compel the payment of the tax; that the comptroller does not represent the state so as to conclude it, but that the state can only be bound on notice to the district attorney, as its representative official, who could only move in a proceeding such as this after the expiration of 18 months after the tax became due, and is not a proper party, and cannot intervene in the proceedings, under section 13 of the act. *In re Arnett*, 2 N. Y. Supp. 428; *In re Vanderbilt's Estate*, 10 N. Y. Supp. 239; *In re Astor*, 6 Dem. Sur. 402, 2 N. Y. Supp. 630; *In re Farley*, 15 N. Y. St. Rep. 727. In view, however, of the conclusions I have reached as to the effect of the failure to properly notify the comptroller, I do not deem it necessary to pass upon these views of the district attorney and counsel for the state. I prefer to place my conclusions upon the ground of failure to notify the comptroller in the manner required by law. It is clear that the comptroller is the receiving or collecting officer of the state of the taxes assessed under this act. He is its agent, and represents it. And it seems to me that, if due and proper notice was given to the comptroller of the proceedings for the appraisal, assessment, and collection of such tax, the state would be concluded thereby. That being so, the conclusion is inevitable that he does represent the state, at least in voluntary proceedings instituted by the executors.

"The contention, however, is made by the executors and legatees that, whether the comptroller was duly notified or not of the former proceedings, the decree of October 29th is nevertheless conclusive upon the state, for the reason that the surrogate is made the assessing and taxing officer by the provisions of such act; and the proceedings are *in rem;* and that, such assessment having once been made, it is valid and effectual for all time, and no reassessment can be had. Of course, even if this view was sound, it goes without saying that it would not affect the question here as to the gift of the valuable collections of paintings, water colors, etc., to the Metropolitan Museum of Art, because no appraisal or assessment of them has ever been made or claimed to be. My conclusion upon this phase of the question is that the surrogate is the assessing or taxing officer; but that the assessment made by him must, to be effectual and valid, be made upon an appraiser's report, made in due form of law, and in the special manner provided by this statute to bring the parties to be concluded by the assessment within the grasp of its jurisdiction. If the procedure of the statute is not followed, necessarily the proceedings fail, as being without jurisdiction. It is a well-settled rule of law that, where a statute gives a new power, and prescribes the manner and means of enforcing it, the proceedings under it can be had in no other way than those distinctly specified in the act. A special law giving special proceedings must be strictly followed. Apply that rule to the case here being considered, and the conclusion is easy that the entire former proceeding was without jurisdiction and invalid, so far as any force binding upon the state can be therein found. But I cannot agree with the proposition of the respondents that this is a proceeding *in rem*. It is settled law, long since passed from the realm of doubt and debate, that this tax is one upon the legatee for the privilege of receiving it, and is not one upon the property itself. It is rather a tax upon the devolution or succession of property, and has so been determined in several well-adjudicated cases. My duty in this particular is satisfied by referring to the following cases, which decide that question adversely to respondents' position: *In re Howard*, 5 Dem. Sur. 483; *Wallace* v. *Myers*, 38 Fed. Rep.

184; *In re Vanderbilt's Estate,* 10 N. Y. Supp. 241; *In re McPherson,* 104 N. Y. 306, 10 N. E. Rep. 685.

"This brings us to the main question in controversy, as to whether the legacies in question, or the legatees receiving them, are exempt or liable to taxation, under the provisions of the collateral inheritance act. Upon the general question of the liability of these two institutions to taxation upon legacies received under this act, there can be no doubt, in view of the decisions upon this subject as they now stand. Grace Church is a religious corporation organized under the general act for the incorporation of certain religious societies, (chapter 79, Laws 1801,) and the several acts amendatory thereof. It derives an income from certain sources. It is not a corporation that dispenses a free public charity, whose benefits and privileges are free to all. This removes it from the domain of a free public charity. The Metropolitan Museum of Art is incorporated under chapter 197 of the Laws of 1870. It derives an income from various sources,—from dues of membership, sale of books and specimens, etc. Its privileges and advantages are not free to the general public, but special privileges are given to its members and others on special occasions, to the exclusion of the general public. Neither of these two institutions is exempt from taxation by any provision of law. I need not consider the liability of these two corporations to taxation under the act. That question has been decided. It is sufficient for me to say that both of such corporations are liable to taxation, and to cite as authority therefor the cases of *Catlin* v. *Trustees,* 113 N. Y. 133, 20 N. E. Rep. 864; *In re Vanderbilt's Estate,* 10 N. Y. Supp. 239, and the statutes there cited.

"The counsel for these two institutions, however, claim that, even if they were liable for taxation upon legacies by the provisions of the collateral inheritance tax act, they are specially exempted from such tax by the provisions of chapter 553 of the Laws of 1890.[1] This position is not tenable. The act appealed to is not retroactive, and cannot disturb vested rights. If these two institutions at any time become liable to such tax which became fixed, and thereby a right vested in the state to assess and collect the same, certainly no subsequent act of the legislature can divest such right. We are not called upon, however, to give this question any further consideration. This question has been decided in at least two well-considered opinions, in which it is specifically held that such act was not retroactive in its operation. *Sherrill* v. *Christ Church,* 121 N. Y. 701, 25 N. E. Rep. 50, and *Estate of Minturn.*[2]

"A further contention is made by the respondents that this is an action to recover a statutory penalty or forfeiture, and must be brought within two years after the cause of action accrues, under the provisions of section 384 of the Code of Civil Procedure. I am unable to agree with this interpretation of the law on this subject. However, this question has also been decided adversely to the respondents' position. *In re Vanderbilt's Estate,* 10 N. Y. Supp. 239.

"The executors in this proceeding have paid over and delivered to the two institutions named the legacies bequeathed to them under the will of said decedent. This they did after the making and entry of the decree of the surrogate of October 29, 1887, declaring each of said legacies exempt from taxation. The district attorney, on behalf of the state, raises what to my mind is a serious question, that of the personal liability of the executors for the payment of the amount of the tax upon such legacies. I have carefully considered the brief of the counsel for the petitioner upon the question, and have

---

[1] Laws N. Y. 1890, c. 553, provides that "any religious, educational, bible, missionary, tract, literary, scientific, benevolent, or charitable * * * may take and hold * * * property not exceeding in value $3,000,000. * * * The personal property of such corporations shall be exempt from taxation, and the provisions of" the legacy tax law (Laws N. Y. 1885, c. 483, as amended, etc.,) shall not apply thereto.

[2] See note at end of case.

given the subject much independent examination. My conclusion, however, is that the executors having acted in good faith in paying such legacies, apparently relying upon the decree or order of October 29, 1887, they are not personally liable for such tax. The learned surrogate has decided that under such circumstances as here the executors are not personally liable for such tax. *In re Vanderbilt's Estate*, 10 N. Y. Supp. 239.

"My conclusion, therefore, is that with respect to the people of the state of New York no due and lawful proceedings have been had for the appraisement and assessment of the tax upon said legacies to the Metropolitan Museum of Art, or to the Rector, Wardens, and Vestrymen of Grace Church, pursuant to the provisions of said act; that said legatees are liable for any tax imposed under said act upon said legacies, or for the privilege of taking and receiving the same; that such tax is due and unpaid; that the executors of decedent having paid such legacies to the said named legatees in good faith, and not until after the entry of the decree of October 29, 1887, are not personally liable for said tax; that the question of the fair market value of the legacy of the collection of oil paintings, water colors, and their frames, etc., has never been determined, such legacy having never been appraised by any appraiser, nor assessed by the surrogate; and, finally, that said gifts or legacies should be appraised, and the tax imposed by said statute assessed thereon for the amount of which said legatees should be declared and held liable."

*Benjamin F. Dos Passos*, for petitioner. *Evarts, Choate & Beaman*, for Metropolitan Museum of Art. *Stephen P. Nash*, for Grace Church. *John M. Bowers*, for executors.

RANSOM, S. All the questions raised by learned counsel for all the exceptants have heretofore been carefully considered by me in other cases, and upon further reflection, aided by elaborate and able briefs now submitted, I am confident that my previous rulings are sound. I concur in the findings and conclusions of the learned referee, and adopt his able opinion as expressing my own views upon the questions involved. An appraiser must be appointed pursuant to settled practice, to ascertain the fair market value of the legacies in question.

### NOTE.

The opinion of RANSOM, S., in Re Minturn's Estate, referred to, was filed July 17, 1890, and is as follows: "Objections are made to the order submitted by the district attorney in this matter, and an affidavit is submitted on behalf of the Home for Incurables, claiming exemption by virtue of chapter 553, Laws 1890, approved by the governor, June 7, 1890. The report of the appraiser was filed May 21, 1890, and the matter was on the calendar June 10th. Objections were made and argued, and a decision was handed down on July 2d, confirming the appraiser's report. In Re Kemeys, 9 N. Y. Supp. 182, the general term affirmed the decision of this court that an act took effect when it received the governor's signature, and not before; and Judge BARRETT, in delivering the opinion, says: 'The right to the tax vested under the act of 1885, and as that vested right was not taken away by the act of 1887, but merely withdrawn for the future, there could be no reason why such vested right should not be enforced after the amendatory act, as well as before. This was clearly recognized by the legislature in the passage of the act of 1889; otherwise this latter act would have been superfluous.' This is clearly the case at bar. The right to the tax vested under the acts of 1885 and 1887, and that right was not taken away by the act of 1890, but merely withdrawn for the future, and that right can be enforced after the amendatory act as well as before. The act took effect on June 7, 1890, and clearly only provides that thereafter there shall be no tax upon certain corporations where the testator dies after the passage of the act. The executors claim that the corporations held subject should pay the allowance to the district attorney. The act plainly holds executors, administrators, and trustees personally responsible for the prompt payment of the tax. The district attorney is entitled to an allowance of $70, and the executors and trustees must be held personally liable therefor."